588 A.2d 584

**CAPITAL CITY LODGE NO. 12, FRATERNAL ORDER OF POLICE, Appellant,**

v.

**The CITY OF HARRISBURG and The Civil Service Board, Appellees.**

Commonwealth Court of Pennsylvania.

Argued Oct. 31, 1990.

Decided March 19, 1991.

Petition for Allowance of Appeal Denied Aug. 26, 1991.

476

Anthony C. Busillo, II, Law Firm of Gary M. Lightman, Harrisburg, for appellant.

Bradley C. Bechtel, City Solicitor, Harrisburg, for appellees.

Before CRAIG, President Judge, and DOYLE, PALLADINO, McGINLEY, PELLEGRINI, KELLEY and BYER, JJ.

PELLEGRINI, Judge.

Capital City Lodge No. 12, Fraternal Order of Police (FOP) appeals from an order of the Court of Common Pleas, Dauphin County, which denied the FOP's Motion for Peremptory Judgment in Mandamus and sustained the City of Harrisburg's (City) and the Civil Service Board's (Board) preliminary objections.

On November 16, 1981, the Pennsylvania Human Relations Commission (PHRC) filed a complaint against the City, alleging that the City, in its employment practices within the police department, was engaged in patterns or practices which discriminated on the basis of race and sex with respect to tenure, terms, condition and privilege of employment in violation of Sections 5(a), (d) and (e) of the Pennsylvania Human Relations Act (Act), Act of October 27, 1955, P.L. 744, *as amended*, 43 P.S. § 955(a), (d) and (e). To avoid litigation, the City entered into a Conciliation Agreement (Agreement) with the PHRC on October 29, 1984.[1]

1. The Conciliation Agreement states in pertinent part:
   WHEREAS, Respondent enters into this Agreement in order to avoid the expense, disruption and time involved in litigation; and WHEREAS, the Commission finds that the Settlement Terms, as set forth in Appendix "B" hereto, are reasonable under the circumstances and finds further that the public interest will be served by settlement of the case.

Under the terms of settlement in the Agreement, the City agreed that its goal was to have a police force that was racially and ethnically representative of the population it served, as well as reflective of the sexual composition of the community it served.[2]  No specific method by which the City was to achieve this goal was set forth in the Agreement.  Such compliance was left up to the City to achieve.

In an effort to comply with the goals of the Agreement, the City adopted a "dual list" procedure to fill open positions.  The way this procedure operated was to rank and place the names of all minority and female officers who qualified on a minority list, and to rank and place the names of all majority officers who qualified on a separate majority list.  Whenever a vacancy occurred for a particular rank, the Chief of Police would present three names to the Mayor, alternating from each of the eligibility lists.  If a vacancy was filled by an officer whose name was on the majority list, the next vacancy would be filled by an officer whose name was on the minority list.

As a result of the Board's certification of two eligibility lists for promotions to the positions of Corporal and Lieutenant, and the posting of these two lists on August 2, 1989, the FOP filed with the trial court a Complaint In Mandamus

**2.**  Section III of the Terms of Settlement provides the following:
A) The Respondent's ultimate goal shall be to have a Police Force that is racially and ethnically representative of the population it serves.
1) The Respondent's goal shall be that at the termination of this Agreement, the representation of Blacks and Hispanics shall be, at minimum, 95% of their representation in the community served.
B) The Respondent shall have, as a goal, employment of female Police Officers so that by the expiration of this Agreement, there will be a minimum of five (5) females on each of the three (3) platoons and two (2) female Detectives in both the Youth Aid Section and in the Criminal Investigation Section.
1) The Respondent's ultimate goal shall be a police force which reflects the sexual composition of the community it serves.
C) The aforementioned goals are not intended, and should not be construed as strict, numerical quotas.  They are designed to reflect the intent and good faith efforts of the Respondent to utilize minorities and females as are reasonably available for appointment as Police Officers and promotion in the Bureau.

And For Declaratory Relief. The Complaint alleged that the use of a single list was mandated pursuant to Section 4406 of The Third Class City Code,[3] and requested the court to declare the promotional lists certified by the Board illegal and invalid. The City filed Preliminary Objections in the Nature of a Demurrer, alleging that the FOP had not stated a cause of action, because the FOP had not shown a clear right to relief, had other adequate remedies at law, and had not joined all other interested parties. The FOP then filed a Motion for Peremptory Judgement in Mandamus, which incorporated the Complaint In Mandamus And For Declaratory Relief. The trial court denied the FOP's Motion for Peremptory Judgment in Mandamus and sustained the City's Preliminary Objections, finding that a mandamus was to be granted only when there was no other remedy at law.[4] Because the current collective bargaining agreement contained a provision regarding promotions subject to grievances, and the FOP could have filed a complaint with the Pennsylvania Labor Relations Board (PLRB), there were other remedies available to the FOP. The FOP then filed the present appeal based on the trial court's order.[5]

The issues now before us are whether the trial court erred in sustaining the City's Preliminary Objections based on its conclusion that there were other remedies available to the FOP for addressing the City's usage of a dual list system, and if so, whether the use of a dual list system

3. Section 4406 of The Third Class City Code, Act of June 23, 1931, P.L. 932, as amended, 53 P.S. § 39406, provides in pertinent part that the Board shall make and keep, in numerical order, a list containing the names of all applicants for civil service positions in said city who may pass the required mental and physical examinations.

4. Accordingly, the request for declaratory relief was also denied because, pursuant to Section 7541(c) of the Declaratory Judgments Act, 42 Pa. C.S. § 7541(c), such relief may only be granted when there is no alternative remedy available to the plaintiff.

5. An order denying a motion for peremptory judgment is an interlocutory order and is not appealable as a matter of right. We will therefore quash the appeal to the extent that it seeks to appeal that portion of the trial court's order denying the motion for peremptory judgment.

violates Section 4406 of The Third Class City Code.[6]

When considering preliminary objections in the nature of a demurrer, we accept as true all well-pleaded material facts in the complaint as well as all reasonable inferences that may be drawn from those facts. *Stein v. Richardson*, 302 Pa.Superior Ct. 124, 448 A.2d 558 (1982). Preliminary objections should be sustained and a complaint dismissed only in cases that are clear and free from doubt that the law will not permit recovery by the plaintiff. *Donnelly v. DeBourke*, 280 Pa.Superior Ct. 486, 421 A.2d 826 (1980).

The FOP contends that the trial court erred in sustaining the City's Preliminary Objections because the FOP was clearly entitled to relief since there were no other remedies available to address the issue of whether the dual list system was an appropriate means of determining which officers would be promoted. Specifically, the FOP argues that the grievance procedure under the collective bargaining agreement was not available as a remedy, because an arbitrator would have been limited to interpreting the terms of the agreement and would have had no authority to determine whether the rules and regulations regarding promotions were lawful. We disagree.

Article XXI of the collective bargaining agreement provides the following regarding promotions:

6. The City argues that the FOP's complaint should be dismissed because the Human Relations Commission, as an interested party in the outcome of this matter, was an indispensable party to this litigation and was not joined as required pursuant to Section 7540(a) of the Declaratory Judgments Act, 42 Pa.C.S. § 7540(a). However, under the Conciliation Agreement, the Human Relations Commission and the City only agreed that the City was to eliminate discrimination of minorities in its promotional policies. They did not agree upon any specific method which the City was to use to accomplish this goal. Because the City was permitted to implement the system of its choice to eliminate discrimination, the implementation of another system in place of the dual list system to accomplish the same goal would not require the Human Relations Commission's approval and would not affect the Conciliation Agreement. Therefore, the Human Relations Commission would not be affected by a change in systems and would not be an indispensable party.

All promotions in the Police Bureau will be made from within the ranks of the paid members of the Police Bureau and shall be made by competitive examinations administered by the appropriate Civil Service Board, and the regulations of the Civil Service Board shall be established and copies made available to all members of the Police Bureau indicating the basis upon which eligibility is to be determined.

Article XX, Section 1 of the collective bargaining agreement provides that any dispute arising out of the interpretation of the contract shall be subject to arbitration:

*Any disputes arising under this Agreement relating to interpretations or applications of the terms and conditions of this Agreement* shall be subject to arbitration in accordance with the arbitration provisions of this Agreement, and any award pursuant to any such arbitration shall be final and binding upon the City and the FOP, and shall not be subject to appeal or review. (Emphasis added.)

Because Article XXI refers to *all* promotions made by the Police Bureau, any concerns regarding the newly implemented dual list promotional system, including whether it is legally permissible, would be an appropriate dispute for grievance or arbitration and interpretation pursuant to Articles XXI and XX of the collective bargaining agreement.[7] The applicability of arbitration is further warranted by Section 903 of the Public Employe Relations Act, Act of July 23, 1970, P.L. 563, 43 P.S. § 1101.903, which provides that arbitration of disputes or grievances arising out of the

---

7. Section 7302(a) of the Uniform Arbitration Act, 42 Pa.C.S. § 7302(a), provides that an agreement to arbitrate a controversy on a nonjudicial basis shall be conclusively presumed to be an agreement to arbitrate pursuant to Subchapter B (relating to common law arbitration) unless the agreement to arbitrate is in writing and expressly provides for arbitration pursuant to this subchapter (relating to statutory arbitration) or any other similar statute, in which case the arbitration shall be governed by this subchapter. In common law arbitration, the arbitrator is the final judge of both law and fact. *Elkins & Co. v. Suplee,* 371 Pa.Superior Ct. 570, 538 A.2d 883 (1988). Therefore, an arbitrator would be permitted to hear a complaint regarding the validity of a dual list system such as the one presented by the FOP.

interpretation of the provisions of a collective bargaining agreement is mandatory. Therefore, the FOP's concern regarding the dual list system could be interpreted under the collective bargaining agreement, because filing a grievance or arbitrating the matter would be mandatory.

■ The trial court also found that the FOP had an additional remedy for determining the validity of the dual list system by filing a complaint with the PLRB. However, the FOP argues that such a remedy was not available. The FOP contends that the PLRB has no authority to rule on the legality of civil service procedures, to interpret the state civil service laws or to rule on issues involving the interpretation of the Human Relations Act. Again, we disagree.

The Pennsylvania Labor Relations Act provides two avenues for the determination of the FOP's dispute or to aid in resolution of that dispute. First, pursuant to Section 8(a) of the Pennsylvania Labor Relations Act (Act), Act of June 1, 1937, P.L. 1168, *as amended,* 43 P.S. § 211.8(a), the PLRB is empowered to prevent any person from engaging in any unfair labor practice listed in Section 6 of the Act, 43 P.S. § 211.6. Under Section 6(1)(c) of the Act, it is an unfair labor practice to discriminate with regard to promotion. Therefore, the PLRB would be empowered to determine whether the dual list system was discriminating against majority officers. Second, pursuant to Section 2 of the Act of June 24, 1968 (commonly referred to as Act 111), P.L. 237, 43 P.S. § 217.2, it is the duty of public employers and their policemen and firemen employees to exert every reasonable effort to settle all disputes by engaging in collective bargaining in good faith and by entering into settlements by way of written agreements and maintaining the same. Because the Pennsylvania Labor Relations Act is to be read in *pari materia* with Act 111,[8] the PLRB would have jurisdiction over the FOP's dispute regarding the dual list system of promotions if bargaining was required regarding

**8.** *See Philadelphia Fire Officers Association v. Pennsylvania Labor Relations Board,* 470 Pa. 550, 369 A.2d 259 (1977), which provides the Pennsylvania Labor Relations Act is to be read in *pari materia* with Act 111.

the usage of the dual list system and the City, as the employer, refused to bargain.

■ Because the FOP failed to grieve its complaint pursuant to the collective bargaining agreement or file a complaint against the City with the PLRB for unfair labor practices, we find that the trial court properly determined that the FOP had not utilized all of its remedies at law to resolve the issue of whether the dual list system was a permissible method for promoting officers. Accordingly, because the FOP did not establish that it was clearly entitled to relief, the trial court's order sustaining of the City's Preliminary Objections is affirmed.[9]

## ORDER

AND NOW, this 19th day of March, 1991, the order of the Court of Common Pleas of Dauphin County, dated April 10, 1990, is affirmed, and the FOP's appeal from the trial court's denial of its Motion for Peremptory Judgment in Mandamus is quashed.

9. Because we determine that the FOP had other remedies available for determining the validity of the dual list system, we do not need to address the issue of whether the dual list system is invalidated by The Third Class City Code.