636 A.2d 240

CITY OF PHILADELPHIA, Appellant,

v.

ESTATE OF Mary DENNIS, by her Administrator,
Terry DENNIS, Appellee.

Commonwealth Court of Pennsylvania.

Submitted Oct. 6, 1993.

Decided Dec. 29, 1993.

Alan C. Ostrow, Asst. City Sol., for appellant.

Michael A. Seidman, for appellee.

Before CRAIG, President Judge, and DOYLE, COLINS, PALLADINO, MCGINLEY, SMITH and KELLEY, JJ.

DOYLE, Judge.

The City of Philadelphia appeals by permission an interlocutory order of the Court of Common Pleas of Philadelphia County which overruled the City's preliminary objections in the nature of a demurrer to the complaint in trespass filed by Terry Dennis (Dennis), the administrator of the estate of Mary Dennis (decedent).

The case began on December 16, 1989, when the Philadelphia Police received various calls reporting that an individual, the decedent, was sitting on a bench in cold weather and appeared to be sick and in need of assistance. A police officer was dispatched to the scene and found decedent sitting on a bench near Broad and Spring Garden Streets, but erroneously concluded the decedent was drunk. The officer reported that conclusion to the dispatcher and left without taking any further action. Later, a passing police patrol car was stopped by bystanders and the police officers found decedent dead of what was subsequently determined to be hypothermia.

Dennis filed a complaint against the City, alleging that the City was negligent, *inter alia*, in failing to: (1) immediately respond to the phone calls made on decedent's behalf; (2) properly summon medical authorities to accurately determine decedent's condition; and (3) take decedent to the nearest hospital. The City filed preliminary objections in the form of a demurrer which alleged that Dennis's complaint failed to state a cause of action because it failed to establish a special relationship between decedent and the police, which is necessary to impose a duty upon the police to assist an individual; without such a duty a cause of action could not exist.[1]

1. The elements of a cause of action in negligence are: (1) a duty recognized by law, requiring the actor to conform to a certain standard of conduct; (2) a failure of the actor to conform to that standard; (3) a causal connection between the conduct and the resulting injury; and (4) actual loss or damage to the interests of another. *Morena v. South Hills Health System,* 501 Pa. 634, 462 A.2d 680 (1983).

By order of December 2, 1991, the trial court overruled the City's preliminary objections. The City subsequently petitioned the trial court to amend its interlocutory order to include the certification required by Section 702(b) of the Judicial Code [2] to allow the City to seek permission to appeal the interlocutory order to this Court. The trial court amended its order on July 24, 1992. On September 28, 1992, we granted the City's petition for permission to appeal and this appeal followed.

Initially, we note that:

When reviewing preliminary objections in the nature of a demurrer, we accept as true all well-pleaded material facts in the complaint as well as all reasonable inferences that may be drawn from those facts.... Preliminary objections should be sustained and a complaint dismissed only in cases that are clear and free from doubt that the law will not permit recovery by the plaintiff.

*Capital City Lodge 12 v. Harrisburg,* 138 Pa.Commonwealth Ct. 475, 480, 588 A.2d 584, 586–87 (citations omitted), *petition for allowance of appeal denied,* 528 Pa. 614, 596 A.2d 159 (1991). The test is whether, from all the facts pled, the pleader will be able to prove facts legally sufficient to establish his or her right to relief. *Bower v. Bower,* 531 Pa. 54, 611 A.2d 181 (1992).

In *Thomas v. City of Philadelphia,* 133 Pa.Commonwealth Ct. 121, 574 A.2d 1205, *petition for allowance of appeal denied,* 527 Pa. 659, 593 A.2d 429 (1990), this Court summarized the duty of care owed by a municipality to the general public. We held that:

**2.** Section 702(b) of the Judicial Code, 42 Pa.C.S. § 702(b), provides that where a trial court or government unit believes that its interlocutory order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the matter, it shall so state in its order. The inclusion of such language allows the party to seek permission to appeal an otherwise unappealable interlocutory order. Pa.R.A.P. 1311.

There is generally 'no duty resting on a municipality or other governmental body to provide police protection to any particular person.'

. . . .

A very narrow exception to this no-duty rule exists, but only where there are circumstances establishing a special relationship between the police and the crime victim. In claiming a special relationship, the individual:

> must demonstrate that the police were: 1) aware of the *individual's* particular situation or unique status, 2) had knowledge of the potential for the particular harm which the *individual* suffered, and 3) voluntarily assumed, in light of that knowledge, to protect the *individual* from the precise harm which was occasioned.

*Id.,* 133 Pa.Cmwlth. at 124–25, 574 A.2d at 1206 (quoting *Melendez v. City of Philadelphia,* 320 Pa.Superior Ct. 59, 64, 65, 466 A.2d 1060, 1064 (1983) (emphasis in original)).

Dennis's complaint made the following factual allegations:

5. Various telephone calls were made by persons unknown at this time to the Defendant's police department by dialing 911 and reporting that the decedent was sick and in need of assistance from the Defendant.

6. When a police officer from the Defendant's police department finally appeared at Broad and Spring Garden Streets sometime subsequent to all of the aforementioned telephone calls, said police officer, instead of taking her to the nearest hospital, instead radioed police dispatchers to tell them that the assignment was nothing more then [sic] a drunken person sitting on the bench and thus did not take her to the nearest hospital.

7. Much later on December 16, 1989, and after all the aforesaid telephone calls had been made, a patrol car belonging to the Defendant was stopped by people in the area where decedent was sitting and the officer in the said patrol car determined at that time that decedent was deceased.

8. Plaintiff's decedent died of hypothermia as a result of inter alia, sitting outside in the weather as it then was.

▇▇▇ Based on the above allegations, the trial court found that Dennis had pled sufficient facts to establish a special relationship between decedent and the police. However, even assuming that the first two criteria of the special relationship test are met,[3] nowhere does Dennis plead facts which satisfy the third requirement that the police voluntarily assumed the protection of decedent from the precise harm suffered, here hypothermia. Dennis apparently contends that because the initial officer's interaction with the decedent was sufficient to convince him that she was drunk, that this interaction in and of itself was sufficient to fulfill the third requirement. We disagree. Absent an express promise to render care or protection, no special relationship is created. *Rankin v. Southeastern Pennsylvania Transit Authority*, 146 Pa.Commonwealth Ct. 429, 606 A.2d 536 (1992); *Morris v. Musser*, 84 Pa.Commonwealth Ct. 170, 478 A.2d 937 (1984).

The trial court in its opinion relied primarily on *Socarras v. City of Philadelphia*, 123 Pa.Commonwealth Ct. 197, 552 A.2d 1171, *petitions for allowance of appeal denied*, 522 Pa. 605, 562 A.2d 828, and 522 Pa. 608, 562 A.2d 829 (1989); *City of Philadelphia v. Middleton*, 89 Pa.Commonwealth Ct. 362, 492 A.2d 763 (1985), and *Capanna v. City of Philadelphia*, 89 Pa.Commonwealth Ct. 349, 492 A.2d 761 (1985), to support its conclusion that a special relationship had been established. However, all of these cases are distinguishable from the case now before us.

In *Middleton*, the plaintiff, Middleton, was having a diabetic attack when he was approached by the police and accused of being drunk. Although Middleton attempted to explain his

---

**3.** There is no factual allegation that the police were aware of either decedent's particular or unique situation or that she was potentially at risk of hypothermia. With regard to the first criterion, the police had merely been informed that decedent was "sick." Secondly, nothing indicates that the police were aware that decedent was at risk of hypothermia and furthermore, decedent's situation was hardly unique in that anyone outside in the winter is potentially at risk of hypothermia. Dennis did not even plead that the weather was *cold*, or that decedent was particularly underdressed for cold weather or that it should have been obvious to the police that prolonged exposure to cold may result in hypothermia.

predicament to the police, he was incarcerated for eight hours without medical care. Similarly in *Capanna,* the police responded to a call for a "hospital case." Instead of taking the plaintiff to the hospital, the officer arrested him and placed him in a cell where he died three hours later. In both these cases, the police met the third requirement by taking the respective plaintiffs into custody.

In *Socarras,* the plaintiff was injured when he struck a disabled vehicle. The vehicle's occupants had signalled to a passing police officer for assistance, but had been ignored by the officer. In that case, the Court found an express promise to care for the plaintiffs in a directive issued by the Philadelphia police ordering police officers to render assistance to motorists. *Socarras,* 123 Pa.Commonwealth Ct. at 201, 552 A.2d at 1173. Here, Dennis has not alleged that either the decedent was taken into custody or that the police had been expressly directed to care for individuals in Dennis's circumstances.

■ Dennis has only pled that the police responded to a call for assistance. A mere response by the police to a call for assistance or aid does not create a special relationship between the police and the person in need of aid. *Yates v. City of Philadelphia,* 134 Pa.Commonwealth Ct. 282, 578 A.2d 609 (1990), *petition for allowance of appeal denied,* 527 Pa. 660, 593 A.2d 430 (1991). In *Yates,* the Yates family called the police to break up a gang fight behind their home. The police arrived, but instead of stopping the fight, they remained in their car. After the police departed, a shot was fired at the rear of the Yates' house which struck and killed their daughter. This Court refused to find a special relationship where the police "did not assure the Yates family that they would protect them from the dangers caused by a gang fight. The focus of *Melendez* is on the individual and any danger unique to the individual from which the police specifically promise protection." *Yates,* 134 Pa.Commonwealth Ct. at 286, 578 A.2d at 611.

In *Rankin,* the plaintiff was stabbed on a local Philadelphia train.  The plaintiff alleged that a police officer witnessed the stabbing and failed to prevent it.  He further alleged that the officer escorted him from the train, told him to sit down on a bench, and told him he would be "alright."  The plaintiff subsequently passed out and was left on the bench without medical attention for some four hours.  *Rankin,* 146 Pa.Commonwealth Ct. at 432, 606 A.2d at 537.  This court concluded that a special relationship existed because the three elements of the *Thomas* test were met.  We inferred that the third element was met by the allegation that the police escorted the plaintiff from the train, seated him, and reassured him.  In the case now before us, there are simply no facts pled from which we may make such an inference.  Without the third element of a voluntary assumption by the officer in this case to protect the decedent, there can be no special relationship, no duty, and hence no liability.

Because Dennis failed to plead sufficient facts to allow recovery, we reverse the trial court's order.  Therefore, we remand this case to the trial court for the entry of an order sustaining the City's preliminary objections and dismissing Dennis's complaint.

## *ORDER*

NOW, December 29, 1993, the order of the Court of Common Pleas of Philadelphia County in the above-captioned matter is hereby reversed and this case is remanded for the entry of an order sustaining the preliminary objections of the City of Philadelphia and dismissing Terry Dennis's complaint.

Jurisdiction relinquished.

SMITH, Judge, dissenting.

I dissent from the majority opinion which in essence decides not only the law but the facts as well to defeat Dennis' negligence claim against the City.  The majority purports to distinguish Dennis' claim from cases where the Court determined that special relationships were created between an

individual and the police to invoke exception to the no-duty rule articulated in *Thomas v. City of Philadelphia,* 133 Pa.Commonwealth Ct. 121, 574 A.2d 1205, *appeal denied,* 527 Pa. 659, 593 A.2d 429 (1990). However, Dennis' claim cannot be distinguished from cases where this Court has applied the exception to the no-duty rule, and because Dennis' complaint does not specifically plead each and every minute fact to establish threshold requirements of the special-relationship test, the majority would require the trial court to sustain the City's preliminary objections and dismiss Dennis' complaint.

This Court summarized the duty owed by a municipality to the public and stated that only where circumstances establish a special relationship between the police and an individual may that individual sustain a cause of action in tort for the failure of a police officer to protect the individual from harm. To satisfy the special-relationship test, the individual must show that the police were aware of the individual's particular situation or unique circumstances; the police had knowledge of the potential for a particular harm which the individual in fact suffered; and with that knowledge, the police voluntarily assumed to protect the individual from the harm suffered. *Thomas; Morris v. Musser,* 84 Pa.Commonwealth Ct. 170, 478 A.2d 937 (1984).

In *Thomas,* the plaintiff filed a negligence suit due to the alleged failure of Philadelphia police to intervene in her imprisonment by a criminal later convicted of heinous crimes. In rejecting Thomas' arguments, this Court held that the degree of the police department's knowledge about possible criminal activity and delay in response to this activity did not establish elements of a special relationship between the police and Thomas. The police had no knowledge of Thomas' particular situation nor of the potential for the harm that she suffered, and she was not under police control; hence, no duty was owed to her. *Thomas* is clearly distinguishable however from the case sub judice because the officer was made aware of Dennis' particular situation by virtue of prior reports to the police that Dennis was ill and required assistance, and was aware that the potential for harm existed which she suffered

due to weather conditions occurring at the time of year involved.

In *Socarras v. City of Philadelphia*, 123 Pa.Commonwealth Ct. 197, 552 A.2d 1171, *appeals denied*, 522 Pa. 605, 608, 562 A.2d 828, 829 (1989), a police officer failed to stop and assist the occupants of a disabled pick-up truck broken down in the middle lane of an interstate highway. Although observing the driver's attempt to flag the officer, he failed to stop to render assistance. Socarras was injured when his vehicle struck the rear of the disabled vehicle and argued in his appeal to this Court that because the officer had actual knowledge that a motorist was stranded in a dangerous position on the highway, a special relationship arose creating a duty to provide necessary assistance. Reversing the trial court's grant of summary judgment, this Court held that failure of the officer to take appropriate action, where specific statutory authority authorized such, violated the duty owed to occupants of the disabled vehicle as well as to approaching motorists who may foreseeably come into contact with the stranded vehicle.

Likewise, and in a case more closely analogous to the matter sub judice, *Rankin v. Southeastern Pennsylvania Transp. Auth.*, 146 Pa.Commonwealth Ct. 429, 606 A.2d 536 (1992), this Court reversed the entry of summary judgment where a police officer employed by SEPTA and the City of Philadelphia witnessed the assault and stabbing of Rankin on a subway train but failed to prevent the stabbing or act to prevent the assault. The officer nonetheless escorted Rankin from the train to the platform, and told him he would be all right and to sit on the bench. Four hours later, unconscious and suffering a stab wound, Rankin was removed from the platform to a hospital for treatment. This Court wisely held in *Rankin* that the no-duty rule was inapplicable and the officer was not relieved of his duty to protect Rankin after the stabbing. Just as in the matter sub judice, the officers in *Socarras* and *Rankin* were aware of the plaintiffs' particular situations or unique status and of the potential for the particular harm suffered by the plaintiffs and voluntarily assumed to assist them.

Moreover, in *City of Philadelphia v. Middleton,* 89 Pa.Commonwealth Ct. 362, 492 A.2d 763 (1985), an injured party collapsed on a sidewalk, was approached by a police officer, and was accused of drunkenness. The injured was arrested and jailed for several hours during which no medical aid was provided for his diabetic condition. The Court held that a negligence cause of action arose from the duty to provide medical aid to one under police control. Yet, nothing in *Middleton* nor in *Capanna v. City of Philadelphia,* 89 Pa.Commonwealth Ct. 349, 492 A.2d 761 (1985) (plaintiff arrested and later died in jail cell) expressly or impliedly holds that police control is synonymous with jail lock-up as the majority apparently presumes. Police control may be exercised in a myriad of circumstances to be determined by the trier of fact; nonetheless, the manner of control in *Middleton* and *Capanna* is insufficient, standing alone, to distinguish them from the case sub judice.

Given that the first two prongs of the special-relationship test can be established by the pleadings in this case and allowing Dennis all reasonable inferences deducible from the well-pleaded facts, it is apparent that this Court should not require dismissal of Dennis' complaint. Although the third prong of the special-relationship test appears to be the more troublesome, no litmus test exists which can be precisely applied in each and every claim of this nature to defeat a plaintiff's cause of action. The cases should be decided on their own facts. Here, the officer approached Dennis with knowledge of prior reports of her condition and voluntarily interacted with her to the extent he concluded, whether incorrectly or not, that she was drunk and thereafter telephoned police dispatch to report his assessment. The exact extent and nature of the officer's interaction with Dennis or the level and degree of assistance rendered, if any, is a question which must be resolved at trial.

In deciding the third prong, the determinative factors should not be whether the officer failed to "arrest" Dennis, "summon medical aid," "escort" her to another location, "give assurances" that she would be all right or as the majority

would require, state to Dennis that he "voluntarily assumed" to protect her. Furthermore, this is not a case where the police "merely" responded to a police call for assistance which was the determinative factor in *Yates v. City of Philadelphia,* 134 Pa.Commonwealth Ct. 282, 578 A.2d 609 (1990), *appeal denied,* 527 Pa. 660, 593 A.2d 430 (1991). In *Yates,* this Court affirmed the trial court's decision to sustain the City's preliminary objections in the nature of a demurrer because no special relationship was shown between the police and Yates who telephoned police to report fighting between two groups behind the Yates home. Police officers returned to the scene, after their initial stop, remained in their cars and made no attempts to disperse the crowd. After the officers' departure, a shot was fired at the rear of the Yates home which struck their daughter who later died from her wounds. Because the police were not informed that threats or violence was directed toward the Yates and the police made no specific promise to protect the Yates or undertake any greater obligation than those to the neighborhood in general, the Yates did not demonstrate the existence of a special relationship with the police.

*Yates'* distinctions with the present matter are obvious. The facts here demonstrate more than a "mere" police call for assistance. The police were specifically alerted to the presence of an apparently ill individual sitting on a bench; the officer observed not a neighborhood crowd but an individual's particular situation and unique status; communicated or interacted directly with the individual rather than a crowd in general; had no knowledge that the Yates may be victimized by gunshot but was aware that due to weather conditions Dennis may suffer harm; and undertook no specific investigation of the Yates' situation but did interact with Dennis, concluded she was drunk, radioed his assessment to police dispatch, and instead of providing assistance, simply moved on. Implicit in the majority's opinion is that the officer's actions were proper since anyone outside in the winter is potentially at risk of hypothermia—a position which sorely misses the significance of the issues in this case.

It is enough that the officer responded to the call, was in control of Dennis' situation, observed her particular circumstances, had knowledge of the potential for harm which she ultimately suffered, and undertook to assess her condition and report to police dispatch. Based on the facts pleaded, a jury could decide that a duty was owed to Dennis and the officer breached that duty.[1] Therefore, it is not clear from the facts pleaded that Dennis will be unable to prove her case, and any doubts should be resolved in her favor and against the City. *Gaster v. Township of Nether Providence*, 124 Pa.Commonwealth Ct. 595, 556 A.2d 947 (1989). The trial court's decision to overrule the City's preliminary objections should be affirmed, and Dennis should be allowed to proceed with her case.

PALLADINO, J., joins.

---

1. The fallacy of the majority's viewpoint is illustrated by virtue of the fact that the City would not have been held liable for example in *Rankin* had the officer merely walked away instead of escorting the victim from the train to the platform and stating to him that he would be all right.