**GREENWICH TOWNSHIP,
et al., Appellants,**

v.

**Merry J. MURTAGH, et al.,**

**BOROUGH OF WYOMISSING HILLS,
Borough of Birdsboro, Borough of
West Reading, et al., Appellants**

v.

**Merry J. MURTAGH, Spencer Lee
Cherashore, Frederick
Murtagh, et al.**

Commonwealth Court of Pennsylvania.

Argued Dec. 7, 1994.

Decided May 26, 1995.

As Amended June 27, 1995.

David M. Kozloff, for appellants/appellees Greenwich Tp., Marion Tp., Brecknock Tp., Centre Tp. and Maxatawny Tp.

Robert A. Swift, for appellees/appellants Merry J. Murtagh, Spencer Lee Cherashore, Frederick Murtagh, Mary S. Murtagh, Anthony Gigliotti, George Chovanes, Margaret Chovanes, Michael Chovanes, LRM Ziegenfuss, a Pennsylvania Partnership, and Concetta C. Good.

E. Thomas Henefer, for appellee/appellant County of Berks.

Joseph C. Mossop, for appellee/appellant Berks County Bd. of Assessment Appeals.

Before COLINS, President Judge, and McGINLEY, SMITH, PELLEGRINI, FRIEDMAN, KELLEY and NEWMAN, JJ.

KELLEY, Judge.

Greenwich Township et al. and Borough of Wyomissing Hills et al. (Local Governments) appeal an order of the Court of Common Pleas of Berks County (trial court) finding that Merry J. Murtagh et al. (Taxpayers) have stated a cause of action against the Local Governments for their taxing policies which allegedly violate the Taxpayers' civil rights under 42 U.S.C. § 1983.[1]

## I. FACTUAL AND PROCEDURAL HISTORY

The factual and procedural history as substantially set forth in our decision in *Greenwich I* is as follows. Taxpayers, representing a class of recent purchasers of real property in Berks County, a Third Class County, filed a complaint against the County of Berks (County) and the Berks County Board of Assessment Appeals (Board), alleging that they had adopted a so-called "Welcome Stranger" policy. Taxpayers alleged that under that policy, recently purchased properties were re-assessed at fair market value, resulting in significantly higher tax assessments than those on other comparable longer-held neighboring properties which were not re-assessed under the practice. Taxpayers alleged that the County and the Board's practice violated their equal protection rights under the Fourteenth Amendment[2] and, because the re-assessments were done under color of state law, there was a violation of 42 U.S.C. § 1983.

1. This appeal is before this court on remand from our Supreme Court. This court initially entered a decision in this case on January 9, 1992, wherein we determined that the trial court lacked subject matter jurisdiction over Taxpayers' section 1983 claims because the General and Third Class County Assessment Laws provided Taxpayers with a plain, adequate and complete remedy. Accordingly, we reversed the trial court's order and remanded with instructions to dismiss the entire action for lack of subject matter jurisdiction. *See Greenwich Township v. Murtagh*, 144 Pa.Commonwealth Ct. 624, 601 A.2d 1352 (1992) (hereinafter referred to as *Greenwich I*).

Taxpayers appealed our decision to the Supreme Court which reversed our holding that Taxpayers could maintain a section 1983 suit without first exhausting statutory remedies. Accordingly, our Supreme Court reversed and re- manded this matter to this court with directions to address the Local Governments' contentions contained in the present appeal regarding the issue of whether the Local Governments are proper parties to the section 1983 action. *See Murtagh v. County of Berks*, 535 Pa. 50, 634 A.2d 179 (1993), *cert. denied*, — U.S. —, 114 S.Ct. 1397, 128 L.Ed.2d 71 (1994).

2. Taxpayers rely principally on *Allegheny Pittsburgh Coal Co. v. County Commission of Webster County*, 488 U.S. 336, 109 S.Ct. 633, 102 L.Ed.2d 688 (1989), where the Supreme Court overturned a West Virginia Supreme Court decision, and held that this type of "Welcome Stranger" policy violated the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

The County and the Board filed a number of preliminary objections to Taxpayers' complaint, only one of which the trial court sustained finding that Taxpayers had failed to sue the local governments who levied taxes which were indispensable parties. As a result, Taxpayers filed an amended complaint joining all taxing authorities in the County, nearly 100 boroughs, townships and school districts. Many of the newly joined local government defendants again filed preliminary objections to the amended complaint. The only preliminary objections at issue herein are demurrers to the amended complaint averring that the amended complaint failed to state a cause of action against the Local Governments for their taxing policies which allegedly violated section 1983.

The trial court dismissed the Local Governments' preliminary objections in the nature of a demurrer and held that the amended complaint stated a cause of action against the Local Governments under section 1983. The trial court rejected the Local Governments' contention that they are not proper parties to the section 1983 action because they were not involved in determining the assessments, which were done solely by the Board. The trial court determined that Local Governments should be party defendants because they were the recipients of the alleged improper taxes, and did in fact levy the taxes. Thereafter, the trial court certified the issue for appeal pursuant to Pa.R.A.P. 1311(b).[3] Subsequently, this court granted separate petitions for permission to appeal an interlocutory order filed by the Local Governments and consolidated the appeals.

## II. DISCUSSION

■ Now that our Supreme Court has decided that Taxpayers may maintain a section 1983 suit without first exhausting statutory remedies, the issue presented for review to this court, on remand, is whether the trial court erred in dismissing the Local Governments' preliminary objections in the nature of a demurrer where the Local Governments do not have the power or authority to set property assessments.[4]

Section 1983 provides, in pertinent part, that:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

■ Under section 1983, local governments are considered "persons" who may be directly liable when a policy statement, ordinance, regulation, or decision officially adopted and promulgated by a local government or municipality causes an employee, acting under the color of law, to violate another's constitutional rights. *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). A local government may also be held liable when a "custom" of the governing body causes a constitutional deprivation even though such a custom has not received formal approval through the body's official decision making channels. *Id.*

3. Under Pa.R.A.P. 1311(b), a party may file a petition for permission to appeal to this Court when the trial court's interlocutory order contains the statement prescribed in 42 Pa.C.S. § 702(b). The trial court's order satisfied this requirement by stating that "[t]his Order is deemed to involve a controlling question of law as to which there is a substantial ground for difference of opinion. An immediate appeal from the Order may materially advance the ultimate determination of this matter."

4. We note that when reviewing preliminary objections in the nature of a demurrer, we accept as true all well-pleaded material facts in the complaint as well as all reasonable inferences that may be drawn from those facts. *Philadelphia v. Estate of Dennis*, 161 Pa.Commonwealth Ct. 69, 636 A.2d 240 (1993). Preliminary objections should be sustained and a complaint dismissed only in cases that are clear and free from doubt that the law will not permit recovery by the plaintiff. *Id.* The test is whether, from all the facts pled, the pleader will be able to prove facts legally sufficient to establish his or her right to relief. *Id.*

A local government cannot be held liable under section 1983 on a *respondeat superior* theory. *Id.* Instead, it is when the execution of a local government's policy, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the local government as an entity is responsible under section 1983. *Id.*

Since *Monell* was decided, the United States Supreme Court has developed further the contours of municipal liability under section 1983. In *Pembaur v. City of Cincinnati,* 475 U.S. 469, 482, 106 S.Ct. 1292, 1299, 89 L.Ed.2d 452 (1986), the Supreme Court in addressing when a municipality is responsible for its actions, opined that not every decision by an officer of a local government automatically subjects the municipality to section 1983 liability. The *Pembaur* court stated that:

> Municipal liability attaches only where the decision-maker possesses final authority to establish municipal policy with respect to the action ordered. The fact that a particular official—even a policymaking official—has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion.... The official must also be responsible for establishing final government policy respecting such activity before the municipality can be held liable. Authority to make municipal policy may be granted directly by a legislative enactment or may be delegated by an official who possesses such authority, and of course, whether an official had final policymaking authority is a question of state law.... We hold that municipal liability under § 1983 attaches where—and only where— a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question.

5. The Pennsylvania School Boards Association, Pennsylvania State Association of Boroughs, and the Pennsylvania State Association of Township Supervisors have filed an amici curiae brief in support of Local Governments' position in this appeal.

*Id.* at 481–83, 106 S.Ct. at 1299–1300 (citations and footnotes omitted).

The Supreme Court in *City of St. Louis v. Praprotnik,* 485 U.S. 112, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988), reiterated that the identification of policymaking officials is a question of state law. The *Praprotnik* court pointed out that:

> The States have extremely wide latitude in determining the form that local government takes, and local preferences have led to a profusion of distinct forms. Among the many kinds of municipal corporations, political subdivisions, and special districts of all sorts, one may expect to find a rich variety of ways in which the power of government is distributed among a host of different officials and official bodies.... [W]e can be confident that state law (which may include valid local ordinances and regulations) will always direct a court to some official or body that has the responsibility for making law or setting policy in any given area of a local government's business.

*Id.* at 124–25, 108 S.Ct. at 925 (citations and footnotes omitted).

In the present case, the Local Governments contend that since they cannot be liable under a theory of *respondeat superior,* to maintain their cause of action, Taxpayers must aver and prove culpable conduct on the part of the Local Governments. Specifically, that the Local Governments had some power and authority over the property tax assessment process which allegedly injured Taxpayers. Local Governments argue that they have no power or authority to adopt, implement or execute ordinances, regulations, customs or policies pertaining to the assessment of real property as this power and authority is exclusively statutorily vested in the Board. Further, the Local Governments contend that they could not delegate an authority which they do not possess.[5]

The County Commissioners Association of Pennsylvania has filed a brief of amicus curiae supporting the position of the County and the Board.

In response, the Board and the County argue that the trial court properly denied the Local Governments' demurrers for three reasons. First, if the Local Governments are dismissed from this case, the Board and the County might be required to pay money to Taxpayers representing taxes the Local Governments collected. According to the Board and the County, this result would be unfair and contrary to Pennsylvania law, which requires the Local Governments to refund excess taxes they collect even if the overpayment was cause solely by an improper assessment.

Second, the Local Governments are liable under section 1983 for constitutional violations by officials who have final policymaking authority to act on their behalf. The Board and the County contend that the General Assembly has the power to delegate authority for section 1983 purposes, without any action or consent by the Local Governments. Third, the amended complaint states a section 1983 claim based on the Local Governments' own conduct, as well as the Board's conduct.

Pursuant to the General County Assessment Law (GCAL) [6] and the Third Class County Assessment Law (TCCAL), [7] a board of assessment appeals, appointed by the county commissioners of third class counties, is vested with the statutory authority to make and have supervision of the making of annual assessments of property made subject to assessment for taxation for county, borough, town, townships, school, poor and institution district purposes. Section 3 of TCCAL, 72 P.S. § 5344. In addition, the board of assessment appeals is vested with the statutory authority to make and have supervision of the listing and valuation of property excluded or exempted from taxation. *Id.* Under this scheme, the board of assessment appeals appoints assessors to make the annual valuation of all property subject to assessment for taxation. *See* section 4 through 6 of TCCAL, 72 P.S. §§ 5345–5347.

■ The assessment of properties by the board of assessment appeals must be equal and uniform. *See* section 7 of TCCAL, 72 P.S. § 5348(d); *see City of Lancaster v. Lancaster County*, 143 Pa.Commonwealth Ct. 476, 599 A.2d 289 (1991), *petition for allowance of appeal denied*, 530 Pa. 634, 606 A.2d 903 (1992). The board of assessment appeals is required to maintain an assessment roll and must annually notify the property owners of the value of the assessment pertaining to their property and any person or taxing district aggrieved by any assessment may appeal to the board for relief. *See* section 8 of TCCAL, 72 P.S. § 5349.

After any appeals have been completed, a copy of the final annual assessment roll must be provided to the chief clerk of the county commissioners and to each taxing district. *Id.* If a mathematical or clerical error is made with regard to an assessment, the board of assessment appeals must inform the appropriate taxing district. *See* section 8.4 of TCCAL, added by Act of October 9, 1986, P.L. 1418, 72 P.S. § 5349.4. Thereafter, the taxing district must refund to the taxpayer any overpayment made as a result of the error. *Id.* Reassessment, with or without application by the owner, as a decision of judgment based on the method of assessment by the board of assessment appeals, shall not constitute an error under section 8.4. [8]

■ Recognizing the guiding principles set forth by the United States Supreme Court and the statutory scheme adopted by the Pennsylvania General Assembly, this court believes that the Local Governments are not proper parties to Taxpayers' section 1983 action. It is clear from the statutory scheme that the Board and the County are the governmental bodies with final policymaking authority with regard to the supervision and

---

**6.** Act of May 22, 1933, P.L. 853, *as amended*, 72 P.S. §§ 5020–101—5020–602.

**7.** Act of June 26, 1931, P.L. 1379, *as amended*, 72 P.S. §§ 5342–5350j.2. This act does not have an official name but is commonly referred to as the Third Class County Assessment Law.

**8.** This section applies to all errors on assessments discovered on or after January 1, 1981. 72 P.S. § 5349.4.

method of assessments of real property in the County.

The County and the Board argue that the Local Governments possess the final policy-making authority with regard to property assessments based on the notion that the General Assembly has delegated that authority to the Board and the County on behalf of the Local Governments. We disagree. Clearly, the provisions of the GCAL and TCCAL reveal that the General Assembly, by legislative enactment, has granted directly to the Board and the County the authority to make municipal policy with respect to the supervision and method of real property assessments levied by the Local Governments.

While the Local Governments do have a choice as to whether to levy their taxes based on county assessments, they elect to do so without also being the official governmental body responsible for establishing the supervision or method of assessment. Under the TCCAL, each local government entity, as a taxing district, is provided with the value of the assessments by the board. Although the value of that assessment may be challenged and appealed to the board by the Local Governments as taxing districts, it is the Board and not the Local Governments, which has the final determination, subject to further court appeal, as to the value of any assessment of real property. Therefore, the trial court's determination that the Local Governments can be held liable under section 1983 because they accepted the Board's actions without question and made no effort to require the Board to change its policy is incorrect.

By virtue of the fact that the Board and the County are responsible for making and setting the policy as to the manner and method of assessments to be utilized, only the Board's and the County's decisions in this area of governmental business can provide a basis for municipal liability. Plainly stated, the decisions of the Board and the County to act unlawfully are not the decisions of the Local Governments when it comes to the supervision or method of assessing real property in the County.

Further, we reject the Board's and the County's argument that the trial court's order should be affirmed because they may have to pay money to Taxpayers representing taxes the Local Governments collected which the Local Governments are obligated to repay under the TCCAL. The TCCAL provides that a taxing district must repay taxes incurred as a result of a mathematical or clerical error with regard to an assessment. Section 8.4 of TCCAL. Therefore, we do not read this provision of the TCCAL as requiring that the Local Governments remain parties to this federal section 1983 action for this reason.

▮▮▮ This provision of the TCCAL aptly provides an avenue of relief to a taxpayer that has been overcharged due to a clerical or mathematical error. This provision does not provide that a taxing authority must pay damages arising out of litigation based on an overpayment of taxes resulting from illegal assessments made by the Board. Moreover, this provision of the TCCAL provides that reassessment "as a decision of judgment based on the method of assessment by the board, shall not constitute an error under this section." *Id.* This language indicates to this court that any grievance a person or taxing district may have with regard to the assessment of property in the County based on grounds other than a mathematical or clerical error must be resolved through other means.

A review of the amended complaint filed by Taxpayers reveals that the averments are insufficient to hold the Local Governments liable in this section 1983 action. Taxpayers allege that the Local Governments are liable due to the fact that the Local Governments receive and levy the tax assessments. Since we have determined that the Local Governments are not the final policymakers with respect to the supervision, manner or method of the assessments upon which the Local Governments levy their taxes, the allegations of Taxpayers' amended complaint are insufficient to state a cause of action against the Local Governments under section 1983.

Accordingly, the order of the trial court is reversed and this matter is remanded to the trial court with instructions to dismiss, with

prejudice, Taxpayers amended complaint with respect to the Local Governments.

FRIEDMAN, J., dissents.

### ORDER

NOW, this 26th day of May, 1995, the order of the Court of Common Pleas of Berks County, dated January 23, 1991, as amended by order dated March 6, 1991, is reversed and this matter is remanded with instructions to dismiss, with prejudice, appellees' amended complaint with respect to Greenwich Township et al. and Borough of Wyomissing Hills et al., appellants herein.

Jurisdiction relinquished.

NEWMAN, Judge, dissenting.

Because I agree with the trial court that the General Assembly has delegated to the Berks County Board of Assessment (Board) the final policymaking authority to make assessments for Greenwich Township et al. and Borough of Wyomissing Hills et al. (Local Governments), I respectfully dissent.

In *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978) the Supreme Court stated, "[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent the official policy, inflicts the injury that the government as an entity is responsible under § 1983."

As the majority correctly notes, the Supreme Court in *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481, 106 S.Ct. 1292, 1299, 89 L.Ed.2d 452 (1986) refined the definition of "policy or custom" by holding that "[m]unicipal liability attaches only where the decisionmaker possesses final authority with respect to the action ordered." The court further stated that "[a]uthority to make municipal policy may be granted directly by legislative enactment or may be delegated by an official who possesses such authority, and of course, whether an official had final policymaking authority is a question of state law." *Id.* at 483.

Turning to the statute involved in this case, Section 3(a) of the Third Class County Assessment Law (Law), 72 P.S. § 5344(a) states:

> It shall be the duty of [the board of assessment appeals], in each county to which this act applies, to make and have supervision of the making of annual assessments of persons, property and occupations now or hereafter made subject to assessment for taxation of county, *borough, town, township, school,* poor and institution district purposes, and to make and have supervision of listing and valuation of property excluded or exempted from taxation. The making of triennial assessments as provided by existing law is hereby abolished.

72 P.S. § 5344(a) (emphasis added).

The trial court correctly determined that the legislature, through Section 5344(a) of the Law, has given the Board final policymaking authority to make assessments on behalf of local governments. This is a logical conclusion, because the statute has the effect of preventing local governments from performing their own assessments. If local governments wish to impose a tax, they must do so based upon the Board's assessment. As the Supreme Court noted in *Pembaur*, final policymaking authority can be granted to a governmental body through legislative enactment.

The majority recognizes that in *St. Louis v. Praprotnik*, 485 U.S. 112, 124, 108 S.Ct. 915, 924, 99 L.Ed.2d 107 (1988) the Supreme Court noted that states have great latitude in determining the forms that local government take. Consequently, "one may expect to find a rich variety of ways in which the power of government is distributed among a host of different officials and official bodies." *Id.* at 124–125, 108 S.Ct. at 925. In the instant matter, the state, acting through the legislature, has created a system whereby the authority to make tax assessments for local governments rests with the Board. This is consistent with *Praprotnik*, which stands for the proposition that the states have wide latitude in delegating policymaking authority for local governments.

Because final policymaking authority for making tax assessments on behalf of Local

Governments is vested in the Board by statute, the conduct of the Board is identical to the conduct of local governments for purposes of a lawsuit brought under 42 U.S.C. § 1983. Such an interpretation is consistent with *Pembaur*, where the Supreme Court held that municipal liability attaches where the decisionmaker has final authority to establish policy. Therefore, the Local Governments are properly named as defendants in the instant civil rights action.

For these reasons, I respectfully dissent.

SMITH, J., joins this dissent.

FRIEDMAN, J., joins in the conclusion of this dissenting opinion.