588 A.2d 87

**Thomas E. STRAX and Pennsylvania Coalition of Citizens with Disabilities and Pennsylvania Easter Seal Society and Moss Rehabilitation Hospital, Petitioners,**

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING et al., Respondents.**

Commonwealth Court of Pennsylvania.

Argued Sept. 10, 1990.

Decided March 7, 1991.

Judith A. Gran, with her, Frank J. Laski and Timothy M. Cook, Public Interest Law Center of Philadelphia, Philadelphia, for petitioners.

Gwendolyn T. Mosley, Sr. Deputy Atty. Gen., with her, John G. Knorr, III, Chief Deputy Atty. Gen., Chief, Litigation Section, and Ernest D. Preate, Jr., Atty. Gen., Harrisburg, for respondents.

Before McGINLEY and KELLEY, JJ., and CRUMLISH, Jr., Senior Judge.

KELLEY, Judge.

This is an action addressed to this Court's original jurisdiction which challenges the Commonwealth's procedures for responding to reports which question a driver's competency to operate an automobile, and for coding the licenses of visibly handicapped persons whom it finds are competent drivers.

Dr. Thomas E. Strax (Strax) commenced this action as a class action by filing a petition for review, and requesting preliminary injunctive relief.[1] The petition alleged that the respondents'[2] (department) procedures, and actions pursuant to them, violate the Vehicle Code; article I, sections 1 and 26 of the Pennsylvania Constitution; the due process

---

1. The Pennsylvania Coalition of Citizens with Disabilities, the Pennsylvania Easter Seal Society, and the Moss Rehabilitation Hospital (additional petitioners) were also listed as petitioners.

2. Respondents are the Department of Transportation, the Department's Bureau of Driver Licensing, the Secretary of the Department, and the Director of the Bureau of Driver Licensing.

and equal protection clauses of the fourteenth amendment to the United States Constitution; and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794. Injunctive relief was denied.

Strax next asked the Court to certify a class consisting of "all disabled individuals who hold Pennsylvania driver's licenses, or are eligible to become Pennsylvania licensed drivers and whose disability does not, in the opinion of an examining physician, affect their ability safely to operate a motor vehicle." By order dated August 20, 1985, Judge Craig, upon petition by Strax's counsel, continued generally the hearing scheduled on the motion for class certification. The order provided that said hearing "shall be rescheduled upon the praecipe of either party." No such praecipe has ever been filed.[3]

The parties agreed at a status conference before Judge Craig in November of 1989 that the disputed issues were legal in nature and, therefore, susceptible to a dispositive motion. The Court then directed the parties to file cross-motions for summary judgment in February of 1990 and supporting briefs by March 31, 1990.

Strax seeks, through his motion for summary judgment, a writ of mandamus directing the department to renew his driver's license without testing his ability to safely operate and control a motor vehicle, and a declaration that the department's procedure of requiring an individual whose driving competency has been questioned to demonstrate his/her driving ability is unlawful. Additionally, Strax

---

**3.** All four of the petitioners appear to have been represented by the Public Interest Law Center of Philadelphia (PILCOP) in the original complaint. Since that time, no other counsel has appeared nor submitted materials on behalf of the additional petitioners. It is clear from PILCOP's continued representation of Strax, its failure to mention the additional petitioners in Strax's brief, and its failure to pursue class certification in over five years, that petitioners have waived their right to seek such certification. Therefore, the additional petitioners, having failed to obtain representative status, have no standing before this court and are necessarily dismissed. We would point out that this Court would have been better served had counsel, as officers of the court, petitioned for a withdrawal of the additional petitioners as parties.

seeks an order enjoining the department's coding of the licenses of visibly handicapped drivers with a symbol to indicate that the department is aware of the disability. The department contends that these claims are moot. We agree.

Strax was first licensed to drive in Pennsylvania in 1971 and has never used special equipment or controls to operate a motor vehicle. In July of 1983, a police officer stopped Strax after Strax had proceeded through a red light. The officer observed that Strax's hands and arms were deformed. Based on his belief that these deformities would impede Strax's driving ability, the officer sent a report to the department recommending that Strax be given a special driver's examination. Thereafter, the department sent Strax a letter directing him to undergo an examination by his physician.

Dr. Nathaniel Mayer conducted a medical examination of Strax and found that Strax had cerebral palsy of the athetoid form. He characterized this condition as static and non-progressive, and claimed that it did not impair Strax's functional ability to drive. Mayer also indicated that from a "medical standpoint" only, Strax was physically and mentally competent to operate a motor vehicle. Thereafter, the department, prompted by the police officer's recommendation for a special driver's examination, informed Strax that he was required to undergo such an examination before his license would be renewed.[4]

Department officials testified that the Vehicle Code provides a two-step process for responding to a recommendation for a special driver's examination. First, a medical examination is conducted pursuant to Section 1519.[5] After

---

4. The department's requests, by letters to Strax dated October 24, 1983 and April 24, 1984, were made pursuant to Section 1514 of the Vehicle Code. 75 Pa.C.S. § 1514. Strax's license was due to expire on March 31, 1984.

5. The relevant portion of Section 1519 of the Vehicle Code provides:
    The department, having cause to believe that a licensed driver or applicant may not be physically or mentally qualified to be licensed, may obtain the advice of a physician who shall cause an examina-

a physician has deemed that a motorist is medically fit to operate a motor vehicle, a driver's examination is conducted pursuant to Section 1514 [6] to determine whether that motorist is actually able to safely operate a motor vehicle and whether any restrictions should be added to the license.

Strax asks us to interpret the meaning and proper application of Sections 1519 and 1514 of the Vehicle Code. Strax contends that he should not be required to submit to a special driver's examination prior to the renewal of his license because Dr. Mayer's report was sufficient to establish his ability to drive pursuant to Section 1519. Strax also claims that the department's practice of classifying drivers using the "C" code violates the Rehabilitation Act of 1973, and the due process and equal protection clauses of the United States and Pennsylvania Constitutions.

The department supports its motion for summary judgment by pointing out that it is authorized by Section 1514(b) of the Vehicle Code to require driving tests when it has reason to believe that a driver may be a safety hazard. The department claims that "C" classification is authorized by Sections 1510 and 1512 of the Vehicle Code and that such classification prevents unnecessary inconvenience to disabled motorists and facilitates the department's administration of the state's licensing program. [7] More importantly, however, the department contends that Strax's claims should be dismissed as moot. We agree.

tion to be made or who shall designate any other qualified physician.
75 Pa.C.S. § 1519(a).

6. The relevant portion of Section 1514 provides:
The department may require persons applying for renewal of a driver's license to take and successfully pass a physical examination or a vision examination ... if the department has reason to believe ... that the person may be a traffic safety hazard.
75 Pa.C.S. § 1514(b).

7. Courts may not invalidate legislative enactments which differentiate based upon physical disability if the challenged provisions are rationally related to some legitimate state objective. *Frontiero v. Richardson,* 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973); *Strathie v. Department of Transportation,* 547 F.Supp. 1367 (E.D.Pa.1982).

■ The general rule is that an actual case or controversy must exist at all stages of appellate review. *Commonwealth v. Smith*, 336 Pa.Superior Ct. 636, 486 A.2d 445 (1984) (citations omitted).

The cases presenting mootness problems involve litigants who clearly had standing to sue at the outset of the litigation. The problems arise from events occurring after the lawsuit has gotten under way—changes in the facts or in the law—which allegedly deprive the litigant of the necessary stake in the outcome. The mootness doctrine requires that 'an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed.' *G. Gunther, Constitutional Law* 1578 (9th ed. 1975).

*In re Gross*, 476 Pa. 203, 382 A.2d 116 (1978). "It is well established that the appellate courts of this Commonwealth will not decide moot or abstract questions." *Smith.* As explained above, a legal question can become moot on appeal as a result of an intervening change in the facts of the case. *In re Gross.*

In the case of *Kuriger v. Cramer*, 345 Pa.Superior Ct. 595, 498 A.2d 1331 (1985), the Superior Court held that a tenant's request for injunctive relief was moot, since she had moved from the mobile home from which she had been actually or constructively evicted by her landlord. In *Appeal of Union Electric Contracting Co.*, 39 Pa.Commonwealth Ct. 584, 396 A.2d 862 (1979), we held that issues regarding payments to a condemnee were academic after the condemnee had relocated, because the requisite actual controversy no longer existed.

The present case involves a similar intervening change in its factual posture. Strax's claims were rendered moot as a direct result of his own actions when he applied for and obtained a New York driver's license in 1987.[8] Thus, Strax

8. Strax's brief indicates that he has a residence in Pennsylvania. The department, in its brief, characterizes Strax as a "former resident" of Pennsylvania. Although it is unclear from the record where Strax presently resides, his brief indicates that he possesses a valid New

no longer suffers from any inadequacy of the Pennsylvania Vehicle Code, and no longer has any stake in the outcome of this case.

■ There are several rare instances in which this Court will decide questions that have otherwise been rendered moot. Such situations arise where the questions presented for review are of great public importance, involve exceptional circumstances, or are capable of repetition yet escape review. *Smith; see also Benoff v. Zoning Board of Adjustment*, 107 Pa.Commonwealth Ct. 578, 528 A.2d 705 (1987). Our courts are even more reluctant to decide moot questions which raise constitutional issues, because constitutional questions are not to be dealt with abstractly. *Smith*. None of these exceptions to the mootness doctrine apply here.

■ Our appellate courts have infrequently invoked the "great public importance" exception, and we do not believe that that exception applies here. *Id*. Nor do we believe that this case presents exceptional circumstances warranting decision of the moot question. Finally, while it may appear that this case falls within the exception of cases capable of repetition, yet evading judicial review, closer examination reveals that it does not. Strax was licensed to drive in Pennsylvania from 1971 to 1984. His own actions have rendered the questions he presented moot. This does not mean, however, that issues similar to those presented by Strax would not be resolved if presented by a Pennsylvania resident who does not possess a driver's license from another state.

We conclude that the claims presented by the instant action do not fall within any exception to the mootness doctrine. Therefore, we dismiss Strax's case for mootness. We deny the department's motion for summary judgment, because summary judgment requires a decision based upon

York driver's license, and, according to a State of New York Driver's License Application approved March 18, 1987, Strax indicated that his mailing address was 10–53 Totten Street, Whitestone, New York, 11357.

the merits of the legal issues grounded in an actual controversy; no such controversy now exists here.[9]

Accordingly, each party's motion for summary judgment is denied and the case is dismissed as moot.

## ORDER

NOW, this 7th day of March, 1991, the above-captioned matter is dismissed as moot, and each party's motion for summary judgment is denied.

9. *Zemprelli v. Thornburgh,* 78 Pa.Commonwealth Ct. 45, 48, n. 3, 466 A.2d 1123, 1125, n. 3 (1983).