647 A.2d 642

**Mark M. RISTAU, Appellant,**

**v.**

**Hon. Robert P. CASEY, Governor of Commonwealth of Pennsylvania, and Trial Court Nominating Commission of the 37th Judicial District of the Commonwealth of Pennsylvania, William R. Mervine, Chairman.**

Commonwealth Court of Pennsylvania.

Argued June 8, 1994.

Decided Aug. 24, 1994.

Ross McKeirnan, for appellant.

Gregory E. Dunlap, Executive Deputy Gen. Counsel, for appellees.

Before CRAIG, President Judge, and DOYLE, McGINLEY, PELLEGRINI, FRIEDMAN, KELLEY and NEWMAN, JJ.

NEWMAN, Judge.

The Honorable Robert P. Casey, Governor of the Commonwealth of Pennsylvania, and the Trial Court Nomination Commission for the Thirty-seventh Judicial District of the Commonwealth have filed preliminary objections to the petition for review in the nature of a complaint in equity filed in this court's original jurisdiction[1] by Mark M. Ristau. For the reasons which follow, we dismiss the petition for review.

## FACTUAL HISTORY

Effective January 2, 1994, President Judge Robert L. Wolfe of the Court of Common Pleas of the Thirty-seventh Judicial District[2] resigned from his commission. The resignation created a vacancy, which under Article V, Section 13(b) of the Constitution of Pennsylvania, "shall be filled by appointment by the Governor." This constitutional provision further provides that "the appointment shall be with the advice and consent of two-thirds of the members elected to the Senate." Art. V, § 13(b).

---

1. Section 761(a) of the Judicial Code, 42 Pa.C.S. § 761(a).

2. The Thirty-seventh Judicial District is comprised of Warren and Forest Counties.

Pursuant to the mandate of Article IV, Section 8(b), the Governor must fill the vacancy "by nominating to the Senate a proper person to fill the vacancy within 90 days of the first day of the vacancy and not thereafter." Accordingly, Governor Casey had until April 2, 1994 to submit to the Senate a nomination to fill the vacancy created by the January 2, 1994 resignation of President Judge Wolfe.

By letters dated December 21, 1993, Governor Casey appointed a five-member Trial Court Nominating Commission,[3] pursuant to Executive Order 1987–17, to aid him in the selection process. According to the terms of Executive Order 1987–17, the Commission was established to assist the Governor in faithfully exercising his constitutional power to appoint judges to the trial courts of this Commonwealth, and to help insure that the most competent, conscientious and dedicated individuals were identified and recommended to him for appointment. Paragraph 1; 4 Pa.Code § 7.131. Executive Order 1987–17 further provides that the Commission shall actively seek and recruit highly qualified candidates to recommend for appointment; accept and consider all applications for recommendation for appointment; and recommend for consideration by the Governor those individuals who are most qualified to serve as trial court judges. Paragraph 2; 4 Pa.Code § 7.132.

With respect to the recommendation process to be followed, Executive Order 1987–17 provides:

a. The Commissions shall vigorously search for and recruit nominees and applicants to fill the vacancies on the trial courts and shall initiate steps to fulfill this responsibility as follows:

(1) Notice to the public generally, in an appropriate manner to be determined by the Commissions.

(2) Within 30 days after learning of any vacancy, a Commission shall evaluate the qualifications of all candidates to fill such vacancies and, by majority vote of its entire

---

**3.** The Commission's five members were William R. Mervine, Chairman; Keith Kirsch, Esquire; R. Paul Rockwell, Esquire; Ellen Ruffolo; and Susan Collins.

membership, select and recommend to the Governor, without indication of preference, a list of candidates whom it concludes to be best qualified, available and willing to serve on the court.

(3) The Commission shall recommend five candidates for each vacancy. Where there are two or more vacancies at the same time, a Commission shall not submit the name of a candidate on more than one list.

b. No candidate may be designated as qualified unless a Commission determines that he or she:

(1) Possesses all of the qualifications mandated by the Constitution and laws of the Commonwealth.

(2) Possesses the personal qualifications of character, integrity, experience, competence and temperament necessary to qualify fully for the judiciary.

c. Within two days after a Commission has designated the candidates it determines to be best qualified for judicial appointment, that Commission shall transmit in writing the names and home and business addresses of such candidates to the Governor.

d. The Governor shall, as soon as possible after receipt of a Commission's nominations, appoint persons from the list of nominees to fill existing vacancies on the trial courts.

Paragraph 6; 4 Pa.Code § 7.136. The Commission is also required, pursuant to the terms of the executive order, to "keep confidential [its] proceedings, recommendations and reports to the Governor." Paragraph 7a; 4 Pa.Code § 7.137(a).

After the resignation of President Judge Wolfe, seven local attorneys submitted their names to the Commission for consideration. The Commission, after reviewing the qualifications of the candidates, then forwarded three of the seven names to the Governor. Following receipt of the Commission's recommendations, Governor Casey selected Paul H. Millin, Esquire. Governor Casey submitted to the Senate the nomination of Mr. Millin on February 10, 1994.

On April 19, 1994, Mr. Millin testified before the Senate Judiciary Committee, and its members voted unanimously to

recommend his confirmation by the Senate. However, the full Senate rejected Mr. Millin's nomination on June 21, 1994. As a result, Governor Casey is not constitutionally empowered to appoint Mr. Millin to the vacancy by issuing a formal commission that would enable him to serve as the President Judge of the Thirty-seventh Judicial District.

## PROCEDURAL HISTORY

After the Commission issued its report, but before Governor Casey nominated Mr. Millin, Ristau on January 18, 1994, filed an action in the Court of Common Pleas for the Thirty-seventh Judicial District. In his complaint in equity and request for injunction and declaratory judgment, Ristau alleged that Governor Casey and the Commission (together, Respondents) violated the provisions of the Sunshine Act (Act)[4] by (1) holding meetings not open to the public; (2) failing to give proper and adequate public notice; (3) not recording votes taken; (4) failing to keep proper minutes; (5) taking official actions and deliberations at a closed meeting and (6) maintaining secrecy in public affairs.

In addition, Ristau requested that the trial court issue upon Respondents a rule to show cause why the Commission should not be enjoined from further secret action. Ristau further asked the trial court to declare invalid all prior actions, votes, recommendations, decisions or other matters held in secret or in violation of the Act. Last, Ristau sought a declaratory judgment invalidating the actions of the Governor and the Commission for failure to meet the requirements of the Act.

By order dated February 7, 1994, the trial court transferred Ristau's complaint in equity to the Commonwealth Court. This court, by order dated March 7, 1994, directed that the complaint be regarded and acted upon as a petition for review in our original jurisdiction.

On April 19, 1994, Ristau served on Respondents his complaint with an application for summary relief and judgment

4. Act of July 3, 1986, P.L. 388, 65 P.S. §§ 271–286.

upon the pleadings.[5]  In the application, Ristau requested this court to invalidate Executive Order 1987–17, to invalidate the Commission as established pursuant to the executive order and to invalidate all recommendations or work product of the Commission.

Respondents filed preliminary objections on April 26, 1994. Specifically, Respondents objected on the basis that Ristau failed to state a claim upon which relief can be granted.[6]

## DISCUSSION

■  The law is clear that a court, when ruling on a preliminary objection in the nature of a demurrer, may sustain the preliminary objection and dismiss the complaint "only in cases that are clear and free from doubt that the law will not permit recovery by the plaintiff." *Capital City Lodge No. 12 v. City of Harrisburg,* 138 Pa.Commonwealth Ct. 475, 480, 588 A.2d 584, 587, *petition for allowance of appeal denied,* 528 Pa. 614, 596 A.2d 159 (1991).

■  In support of their preliminary objection in the nature of a demurrer, Respondents assert that neither the Governor nor the Commission is an "agency" as defined by Section 3 of the Act, 65 P.S. § 273.  Thus, the requirement of Executive Order 1987–17, paragraph 7a, that the Commission "keep confidential [its] proceedings, recommendations and reports to the Governor" does not violate the Act's provisions requiring an "agency" to conduct open meetings, publicly cast and record its votes, keep written minutes and public records and provide public notice of its meetings.  *See* Sections 4, 5, 6 and 9 of the Act, 65 P.S. §§ 274, 275, 276 and 279.

5. Although the averments in Ristau's application for summary relief and judgment upon the pleadings are nearly identical to the averments in his complaint, the application further alleged that Respondents violated the Act by failing to adopt any rules of procedure and by failing to make such rules available to the public, not only in violation of the Act but also in violation of paragraph 7b of Executive Order 1987–17.

6. Although we recognize that this matter is now moot, we will nevertheless reach its merits because the issue presented is one that is capable of repetition and one that is apt to elude judicial review.  *Strax v. Commonwealth,* 138 Pa.Commonwealth Ct. 368, 588 A.2d 87 (1991), *affirmed per curiam,* 530 Pa. 203, 607 A.2d 1075 (1992).

### 1. Whether the Governor is an "Agency"

Section 3 of the Act defines "agency" as follows:

The body, and all committees thereof authorized by the body to take official action or render advice on matters of agency business, of all the following: the General Assembly, the executive branch of the government of this Commonwealth, including the Governor's Cabinet when meeting on official policymaking business, any board council, authority or commission of the Commonwealth or any political subdivision of the Commonwealth or any State, municipal, township or school authority, school board, school governing body, commission, the boards of trustees of all State-aided colleges and universities, the boards of trustees of all State-related universities and all community colleges or similar organizations created by or pursuant to a statute which declares in substance that the organization performs, or has for its purpose the performance of, an essential governmental function and through the joint action of its members exercises governmental authority and takes official action. The term does not include a caucus nor a meeting of an ethics committee created under rules of the Senate or House of Representatives.

65 P.S. § 273.

■ Based upon a reading of the plain language of the statute, Respondents assert that the Governor cannot be an agency under the Act because he is not a "body" as that term is used in the definition, but he is an individual. We agree.

According to Webster's Third New International Dictionary 246 (1986), a body is defined as "a group of individuals united by a common tie or organized for some purpose." The term, therefore, connotes plurality. The Governor, on the other hand, is the individual in whom the Pennsylvania Constitution vests supreme executive power. Article IV, § 2. Pursuant to the Constitution, the Governor shall appoint such officers as he is authorized by law to appoint; and the Constitution further empowers him to fill vacancies in judicial office. Article IV, § 8(a) and (b).

We also find support in Sections 4 and 5 of the Act for our interpretation that an agency cannot be an individual. Specifically, we note that Section 4 speaks in terms of "a quorum of the *members* of an agency," 65 P.S. § 274 (emphasis added); and Section 5 provides that in all meetings of agencies, "the vote of *each member*" must be publicly cast and recorded. 65 P.S. § 275 (emphasis added). Therefore, we conclude, based upon our reading of the plain language of the statute, that the Governor is not an "agency" within the meaning of the Act.[7]

### 2. *Whether the Commission is an "Agency"*

■ In support of their assertion that the Commission is not an "agency" under the Act, Respondents rely upon the following language of the statute's definition:

> The body ... of ... similar organizations created by or pursuant to a statute which declares in substance that the organization performs, or has for its purpose the performance of, an essential governmental function and through the joint action of its members exercises governmental authority and takes official action.

65 P.S. § 273.

Relying on this language, Respondents assert that because the Commission (1) was not created by or pursuant to a statute (2) which declares in substance that the Commission performs, or has for its purpose the performance of, an essential governmental function and (3) does not exercise

7. Moreover, we note that Article IV, Section 1 of the Constitution provides that the Executive Department of the Commonwealth shall consist of a Governor, Lieutenant Governor, Attorney General, Auditor General, State Treasurer and Superintendent of Public Instruction and such other officers as the General Assembly may from time to time prescribe. Therefore, the Governor cannot logically be a "body ... of ... the executive branch ...," 65 P.S. § 273, when he comprises part of the executive branch. *But see Shapp v. Butera,* 22 Pa.Commonwealth Ct. 229, 348 A.2d 910 (1975) (Governor is an "agency" for purposes of the Right-to-Know-Act, Act of June 21, 1957, P.L. 390, *as amended,* 65 P.S. §§ 66.1–66.4; because it would be incongruous to conclude that each department of the executive branch must comply with the Act but that the ultimate repository of all executive authority does not have to comply).

governmental authority, the Commission is not an agency.[8] This interpretation is consistent with the statement of policy issued by the Governor's General Counsel. *See* 4 Pa.Code § 1.42.

While admittedly the Act's definition of "agency" is not a model of clarity, we find merit in Respondents' interpretation. First, we note that the Commission was not created by or pursuant to a statute. The Commission was created solely at the discretion of the Governor, pursuant to Executive Order 1987–17, to assist him in performing his exclusive constitutional power to make nominations and, with the advice and consent of the Senate, to make appointments to the courts of common pleas.

Second, no statute exists which declares in substance that the Commission performs, or has for its purpose the performance of, an essential governmental function. We note that the Commission is not governed by any statute. Moreover, the Commission as created by the executive order does not perform, or have for its purpose the performance of, an essential governmental function. The sole function of the Commission is to make recommendations to the Governor in whom exclusive constitutional authority is vested to make nominations and, with the advice and consent of the Senate, to fill vacancies in the courts of common pleas. Most important, we note that the Governor is not legally bound to accept, or even to seek, the recommendations of the Commission. Under the Constitution, the Governor has complete discretion to act without the Commission's advice or to ignore it when given.

Third, the Commission does not exercise any governmental authority. As previously noted, exclusive authority rests with the Governor to nominate to the Senate a proper person to fill a vacancy in judicial office and to make, with the advice and consent of two-thirds of the Senate, appointments thereto.

8. Respondents, however, concede that the Commission, through the joint action of its members, takes official action. Section 3 of the Act defines "official action" as including, *inter alia,* recommendations made pursuant to an executive order. 65 P.S. § 273.

We find additional support for Respondents' interpretation in the analysis employed by this court in *Fraternal Order of Police Lodge No. 5 v. City of Philadelphia,* 92 Pa.Commonwealth Ct. 340, 500 A.2d 900 (1985), *petition for allowance of appeal denied,* 512 Pa. 636, 518 A.2d 263 (1986).  In *FOP Lodge No. 5,* we addressed the applicability of the Pennsylvania Open Meeting Law,[9] predecessor to the Act, to the Philadelphia Special Investigation Commission (Investigation Commission), a commission created by an executive order of the Mayor of Philadelphia to assist him in the investigation of the MOVE disaster.[10]

Specifically, this court determined that the Investigation Commission did not violate the provisions of the Open Meeting Law when it adopted its Rules of Procedure for Commission Hearings at a closed meeting.  In so holding, we noted that the Investigation Commission, as established, was a temporary, limited-purpose, advisory board without authority to make a binding recommendation which would affect the substantive rights of any individual.  We further noted that the Investigation Commission, therefore, lacked the essential character of agencies, such as zoning hearing boards, school boards and utility commissions, all of which were controlled by the Open Meeting Law.

In reaching our decision in *FOP Lodge No. 5,* this court also quoted with approval the following language of the Oklahoma Supreme Court:

Although different courts must construe different statutory provisions, it appears that the majority of other jurisdictions have generally held that *ad hoc committees or citizens advisory committees, empaneled for the purpose of furnishing information and recommendations* to governing or decision-making entities, are not subject to the open meet-

9.  Act of July 19, 1974, P.L. 486, *as amended,* 65 P.S. §§ 261–269 (repealed by Act of July 3, 1986, P.L. 388).

10.  The Investigation Commission was authorized to conduct investigations and hold hearings and, vested with the authority of the executive and administrative branch, to issue subpoenas and compel the attendance and testimony of witnesses and the production of documents.

ing laws unless they have actual, or de facto decision-making authority.

92 Pa.Commonwealth Ct. at 348, 500 A.2d at 905 (emphasis in original), quoting *Sanders v. Benton,* 579 P.2d 815, 819 (1978).

Similarly, we note that the Commission presently at issue is an advisory one, established for a limited purpose and completely lacking in governmental authority to make binding recommendations to the Governor. As such, the Commission lacks the essential character of an agency, which would subject it to the requirements of the Sunshine Act. Accordingly, we conclude that the Commission is not an "agency" within the meaning of the Act.

Having determined that neither the Governor nor the Commission is an agency subject to the requirements of the Sunshine Act, we sustain Respondents' preliminary objection in the nature of a demurrer, dismiss Ristau's petition for review with prejudice and deny Ristau's application for summary relief and judgment upon the pleadings.

## *ORDER*

AND NOW, <u>August 24, 1994</u>, the preliminary objection of the Honorable Robert P. Casey, Governor of the Commonwealth of Pennsylvania, and the Trial Court Nomination Commission for the Thirty-seventh Judicial District of Pennsylvania in the above-captioned matter is sustained. The petition for review filed by Mark M. Ristau is dismissed with prejudice, and his application for summary relief and judgment upon the pleadings is denied.

DOYLE, J., concurs and dissents.

DOYLE, Judge, concurring and dissenting.

While I agree with the majority's holding that the Trial Court Nominating Commission was not intended by the General Assembly to be included within the term "agency" as it is defined in Section 3 of the Sunshine Act,[1] I cannot agree that

1. Act of July 3, 1986, P.L. 388, 65 P.S. §§ 271–286.

130

the Governor of the Commonwealth of Pennsylvania is not included because he is an individual rather than a "body." Quite frankly, he is the very embodiment of that term as it applies to the executive branch of our state government, and, in my opinion, the Act is clear that the legislature of this Commonwealth meant to include the Governor of this Commonwealth within the term "the executive branch of the government."

Therefore, I concur only in the result reached by the majority.