Samuel H. SMITH and Brett O. Feese, Petitioners

v.

PENNSYLVANIA EMPLOYEES BENEFIT TRUST FUND, and Robert Dubow, Michael J. Masch, Don Adams, Matt Waneck, David Donley, Nancy Derling Martin, David Myers, David Fillman, Edward Keller, Michael Fox, Wendell Young, III, Thomas DeBruin, Mark C. Kornfeld, Joan Bruce, Respondents.

Commonwealth Court of Pennsylvania.

Argued Nov. 16, 2005.
Decided March 16, 2006.

---

**8.** Act of May 21, 1943, P.L. 279.

Cynthia Ranck Person, Williamsport, for petitioners.

Richard Kirschner, Washington, D.C., for respondent, Pennsylvania Employees Benefit Trust Fund.

BEFORE: COLINS, President Judge, and SMITH–RIBNER, Judge, and PELLEGRINI, Judge, and FRIEDMAN, Judge, and LEADBETTER, Judge, and SIMPSON, Judge, and LEAVITT, Judge.

OPINION BY Judge SMITH–RIBNER.

Petitioners Samuel H. Smith, Majority Leader of the Pennsylvania House of Representatives, and Brett O. Feese, Chairman of the House Appropriations Committee, filed their petition for review in this Court's original jurisdiction on July 19, 2005. Petitioners asserted that Respondents Pennsylvania Employees Benefit Trust Fund (PEBTF) and members of its Board of Trustees (Trustees) intended to convene a private, non-public meeting on July 21, 2005 for the purpose of taking official action that would extend medical benefits to same-sex partners of Commonwealth employees and annuitants.

Petitioners also asserted in their petition for review that PEBTF is an "agency" within the meaning of the Sunshine Act, 65 Pa.C.S. §§ 701–716, and that conducting the meeting without notice and being open to the public would violate the Sunshine Act.[1] Respondents filed preliminary objec-

1. Specifically, Petitioners requested an order     preliminarily and finally enjoining the July

tions and a motion to dismiss. The parties filed their respective memoranda, Respondents filed a reply memorandum and John Perzel, Speaker of the House of Representatives, filed his amicus curiae brief in support of Petitioners' position.

The petition for review alleged that the executive branch of the Commonwealth government created PEBTF by an Agreement and Declaration of Trust (Trust Agreement) pursuant to its constitutional and statutory authority for the purpose of providing medical benefits to state employees. PEBTF is administered by a fourteen-member Board of Trustees, seven members appointed by the Governor and seven appointed by unions representing Commonwealth employees. It alleged that PEBTF is funded entirely by contributions from the Commonwealth of about $900 million per year and that the Commonwealth maintains legal title to the assets of the fund. PEBTF is vested with sole authority to make decisions and to take official action on behalf of the Commonwealth and the executive branch regarding matters of employee benefits, including the imposition of per capita financial assessments upon Commonwealth agencies in addition to regular negotiated Commonwealth agency financial contributions.

I

Respondents' preliminary objections assert the following: (1) this Court lacks jurisdiction because PEBTF is not an "agency" as defined in the Sunshine Act; (2) the petition for review fails to state a claim because PEBTF is a product of collective bargaining not "created by or pursuant to a statute" and therefore is not an agency subject to the Sunshine Act; (3) the present issue is moot because Petitioners were invited to the July 21, 2005 meeting and they or their designees attended; (4) the issue is moot because the meeting is concluded, and Petitioners or their designees attended but they declined an offer to address the Trustees; (5) the petition for review sought to enjoin a meeting and so sought by prior restraint to "muzzle" deliberations before they occurred, in violation of First Amendment rights; (6) the Commonwealth and unions negotiated collective bargaining agreements creating PEBTF and it is controlled in part by union trustees, and Petitioners' efforts would alter the bargained-for nature of PEBTF and abrogate the agreements; (7) the petition for review seeks to convert PEBTF from a private employer subject to jurisdiction of the National Labor Relations Board into a public employer subject to the Public Employe Relations Act (PERA), Act of July 23, 1970, P.L. 563, *as amended,* 43 P.S. §§ 1101.101–1101.2301.

■■■ Respondents' memorandum in support of their preliminary objections and motion to dismiss includes a detailed description of the history of PEBTF, with cross-reference to the "Volume of Exhibits" filed with the memorandum.[2] It re-

21, 2005 meeting, preliminarily and finally enjoining the scheduling of private meetings of PEBTF where official action would be taken, preliminarily and finally enjoining action to extend medical benefits to same-sex partners without compliance with the Sunshine Act, requiring Respondents to comply with notice and public access requirements for all meetings where official action would be taken and requiring Respondents to provide notes, minutes or other records of meetings where

official action was taken that were held without public notice.

**2.** Petitioners raise an issue as to the propriety of the filing of such non-record materials in conjunction with preliminary objections, and Respondents' reply brief has appended a notarized "Attestation" by Tommy D. Teague, Executive Director of PEBTF, stating that the attachments to the memorandum are true and correct copies of the documents they represent.

fers to the genesis of PEBTF in the Trust Agreement that became effective October 1, 1988 through collective bargaining between the Commonwealth and Council 13 of the American Federation of State, County and Municipal Employees (AFSCME). Exhibit 3.[3] The Trust Agreement provides for the establishment of a trust fund to provide health, medical, and welfare benefits to public sector employees in the Commonwealth as well as employees of one private sector employer. The PEBTF healthcare benefit program covers employees under the Governor's jurisdiction as well as employees of the Treasurer's Office and Auditor General's Office and other independent governmental entities. Moreover, the Trust Agreement explicitly provides that responsibility for PEBTF's operation, administration, development and implementation is vested in the Trustees. They select all vendors (Highmark, Capital Blue Cross, etc.), and the state has no decision-making power over the contracts. The Commonwealth also invested PEBTF with sole and exclusive authority to make decisions and to exercise options with respect to the health, medical and welfare benefits that the Commonwealth provides to its employees.

## II

Respondents do not address each stated preliminary objection separately; rather, they make an overall argument that PEBTF is not an agency or other similar organization and therefore is not subject to the Sunshine Act. They first note that Section 704, 65 Pa.C.S. § 704, requires that all official actions of an "agency" be taken at a meeting open to the public. Section 703, 65 Pa.C.S. § 703, defines "Agency" as follows:

> The body, and all committees thereof authorized by the body to take official action or render advice on matters of agency business, of all the following: the General Assembly, the executive branch of the government of this Commonwealth, including the Governor's Cabinet when meeting on official policymaking business, any board, council, authority or commission of the Commonwealth or of any political subdivision of the Commonwealth or any State, municipal, township or school authority, school board, school commission, the boards of trustees of all State-aided colleges and universities, the councils of trustees of all State-owned colleges and universities, the boards of trustees of all State-related universities and all community colleges or similar organizations created by or pursuant to a statute which declares in substance that the organization performs or has for its purpose the performance of an essential governmental function and through the joint action of its members exercises governmental authority and takes official action.

---

3. A demurrer may not be a speaking demurrer; it may not aver the existence of facts not apparent from the face of the challenged pleading. *Martin v. Department of Transportation*, 124 Pa.Cmwlth. 625, 556 A.2d 969 (1989). A limited exception is recognized where a plaintiff avers the existence of a written agreement and relies upon it to establish the cause of action; the defendant may properly annex the agreement without creating an impermissible speaking demurrer because it is a factual matter arising out of the complaint. *Id.* Petitioners alleged the existence of the Trust Agreement and relied upon it; therefore, Respondents could properly annex it. This principle does not apply to the other exhibits such as a portion of the current collective bargaining agreement between the Commonwealth and AFSCME, a portion of the collective bargaining agreement between PEBTF and its employees, the PEBTF revised budget for fiscal year 2005–2006, an insurance policy listing, a federal return by an organization exempt from income tax and an annual return/report of employee benefit plan to the Internal Revenue Service.

Respondents assert that PEBTF is not an agency as defined by Section 703 because it is not identified as such either by name (e.g., General Assembly) or by category (e.g., school board). They contend that the fact that PEBTF receives funding from contributions made by state entities does not convert it to an agency, citing *Mooney v. Temple University of the Commonwealth System of Higher Education Board of Trustees*, 448 Pa. 424, 292 A.2d 395 (1972), which held that increased financial assistance by the state to a non-profit corporation organized for educational purposes did not transform it into a state agency within the definition in Section 2 of the act known as the Right–to–Know Act, Act of June 21, 1957, P.L. 390, *as amended*, 66 P.S. § 66.2.

Further, PEBTF does not qualify as a "committee" under Section 703 because its Trustees are not appointed pursuant to statute, nor does the Board have explicit or implicit authority to act on behalf of the Commonwealth or its officials. In *Lee Publications, Inc. v. Dickinson School of Law of the Pennsylvania State University Ass'n*, 848 A.2d 178 (Pa.Cmwlth.), *appeal dismissed*, 579 Pa. 545 857 A.2d 675 (2004), a non-profit corporation was created for the purpose of surviving the merger of The Dickinson School of Law with Pennsylvania State University and retaining the power to enforce obligations undertaken, by suit if necessary. This Court held that a non-profit corporation in a contractual relationship with a government agency is not deemed an actual *de facto* committee of the agency unless the members of the committee are appointed by the agency and are authorized under law to act on behalf of the agency.

The only remaining argument for PEBTF's inclusion under the Sunshine Act would be the reference in Section 703 to "similar organizations" created by or pursuant to a statute. This declares in substance that the organization performs or has for its purposes the performance of an essential governmental function and through the joint action of its members exercises governmental authority and takes official action. *See generally Ristau v. Casey*, 167 Pa.Cmwlth. 118, 647 A.2d 642 (1994). PEBTF does not qualify as a "similar organization." First, PEBTF was not created by statute. Instead, it was created under a collective bargaining agreement and a Trust Agreement. Second, it was not created pursuant to law. There is no Commonwealth law that mandates or authorizes the creation of a welfare trust fund to administer health benefits for public employees. Third, no statutory provision declares in substance that the administration of health benefits is an essential governmental function. When PEBTF defines employee benefits, sets reimbursement amounts for medical procedures and establishes time limits for filing claims, it is not performing a governmental function, nor is it undertaking an "official action" of a government entity.

The Trust Agreement explicitly provides that the Trustees' fiduciary obligations are owed solely to the participants and beneficiaries of the Trust, not the Commonwealth. Section 4.02(b) provides that Trustees are empowered:

To administer and discharge their duties with respect to the Plan(s) solely in the interest of the Participants and beneficiaries; and

(i) for the exclusive purpose of:

A. providing benefits to their Participants and their beneficiaries; and

B. defraying reasonable expenses of administering the Plan(s).

In *National Labor Relations Board v. Amax Coal Co.*, 453 U.S. 322, 101 S.Ct. 2789, 69 L.Ed.2d 672 (1981), the Supreme

Court held that under the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001–1461, employer trustees of a health benefit plan are specifically precluded from representing the interests of the employer who appointed them. The Court recognized that fiduciary obligations are not merely creatures of statute but are derived from common law principles applicable to all trusts, and it also made clear that trustees appointed by an employer are legally barred from functioning as agents of the employer. Respondents assert that the same common law principles should apply here. Trustees appointed by the Commonwealth to PEBTF are not acting as Commonwealth agents and are not carrying out Commonwealth policies when performing their duties.

Petitioners first contend that factual matters submitted by Respondents are not properly before the Court. They note that Pa. R.C.P. No. 1028 governs preliminary objections and the matters that may be properly raised and considered in the context of preliminary objections. Rule 1028(a) limits preliminary objections to the specific grounds enumerated therein, and Rule 1028(b) requires that the grounds relied upon should be specifically stated in the preliminary objections. In this case the first two identify grounds of lack of jurisdiction and failure to state a cause of action, which are within those specified in Rule 1028(a), but the remaining five do not clearly identify such grounds. The factual assertions and exhibits upon which Respondents rely are matters that are not properly before this Court for consideration as evidence because they are matters which were not of record, neither were they subject to cross-examination or given under oath.

It is well established law in Pennsylvania that "preliminary objections in the nature of a demurrer require the court to resolve the issues *solely on the basis of the pleadings.* Thus, no testimony or other evidence outside the complaint may be considered to dispose of the legal issues presented by a demurrer." *Cardella v. Public School Employees' Retirement Board,* 827 A.2d 1277, 1282 (Pa.Cmwlth. 2003) (citations omitted) (emphasis added). Respondents' factual assertions outside the allegations of the complaint may not be considered in regard to the demurrer. As for the jurisdictional issue, Petitioners note that if Respondents desired to submit additional facts on that point they could have requested a hearing or endorsed the objections with a notice to plead. *See* Note to Rule 1028(c)(2).

Petitioners argue that the question of whether PEBTF is an "agency" under the Sunshine Act is one of first impression. There is no law that currently holds otherwise and would require dismissal of the complaint. They contend that the determination of whether PEBTF is an agency under the Sunshine Act necessarily involves a factual determination of its precise nature, which in turn requires sorting through many complex details surrounding its creation, administration and funding. A determination on this ultimate issue may not be made at this early stage without discovery and a factual determination. As for jurisdiction, Petitioners assert Section 715 of the Sunshine Act, 65 Pa.C.S. § 715, which provides that Commonwealth Court shall have original jurisdiction over actions involving state agencies to enforce the act, and Section 761 of the Judicial Code, 42 Pa.C.S. § 761, which confers jurisdiction upon this Court over actions by and against Commonwealth officials acting in their official capacity. Petitioners state that they are acting in their official and individual capacities.

In response to the demurrer, Petitioners argue that they have set forth a cause of

action for violation of the Sunshine Act by an agency. They also quote the definition of agency in Section 703. Their position is that the executive branch of the Commonwealth has the authority to establish and maintain medical benefits for its employees pursuant to Article 4, Section 2 of the Pennsylvania Constitution, the Civil Service Act, Act of August 5, 1941, P.L. 752, *as amended*, 71 P.S. §§ 741.1–741.1005, and The Administrative Code of 1929, Act of April 9, 1929, P.L. 177, *as amended*, 71 P.S. §§ 51–732. Further, they assert that under PERA the executive branch has a duty to negotiate with collective bargaining units regarding medical benefits. The executive branch created the independent entity PEBTF for the express purpose of performing the essential governmental function of providing medical benefits, and it is funded entirely by tax dollars. Section 704 of the Sunshine Act, 65 Pa.C.S. § 704, requires that "[o]fficial actions and deliberations by a quorum of the members of an agency shall take place at a meeting open to the public. . . ." Adding an additional category of beneficiaries constitutes official action.

To support their characterization of PEBTF, Petitioners cite *Patriot–News Co. v. Empowerment Team of Harrisburg School District Members*, 763 A.2d 539 (Pa.Cmwlth.2000), where this Court affirmed the trial court's grant of a preliminary injunction directing that all future meetings of the two school districts' empowerment teams be open to the public pursuant to the Sunshine Act. The empowerment teams were established to create school improvement plans. They were authorized to take official action related to, *inter alia*, identifying academic standards, revising curriculum and creating policies and procedures to ensure the safety of school environments. After determining that the empowerment teams were authorized to create policy and to make recommendations that the school boards were powerless to alter, the Court deemed that the empowerment teams were *de facto* school boards and so were "agencies" subject to the Sunshine Act.

On the other hand, in *Ristau* this Court determined that the Trial Court Nominating Commission was not an "agency" within the meaning of the Sunshine Act. The Court held that the Commission's sole function was to make recommendations to the Governor, who has the exclusive authority to nominate judges for common pleas court vacancies. The basis for the holding was "that the Governor is not legally bound to accept, or even to seek, the recommendations of the Commission. Under the Constitution, the Governor has complete discretion to act without the Commission's advice or to ignore it when given." *Id.*, 647 A.2d at 647. The unifying theme is that the Court in each case based its decision upon whether the agency in question had the authority to make binding decisions and/or recommendations.[4]

---

4. Amicus Speaker Perzel asserts that PEBTF is an agency or, at a minimum, a hybrid agency of the Commonwealth. The executive branch created PEBTF for the governmental purpose of administering healthcare to its employees. Had the Commonwealth appointed the entire Board of Trustees, rather than share decision-making authority with the unions, there would be little dispute that PEBTF is an agency within the rubric of the Sunshine Act. Furthermore, Respondents' reliance on *Lee Publications, Inc.* and *Ristau* is misplaced.

In the latter this Court held that ad hoc committees or citizen advisory committees impaneled for the purpose of furnishing information and recommendations are not subject to open meeting laws unless they have actual or de facto decision-making authority. Here PEBTF has such authority. In *Lee* the sole issue was whether the board of governors of the non-profit corporation that survived a merger was a "committee" of the body with which it merged. Here PEBTF is a body authorized to take official action on behalf of

In a reply brief Respondents assert that the question of whether PEBTF is an "agency" under the Sunshine Act is a question of law, not a question of fact requiring a trial. They note that the courts have decided such a question on preliminary objections. *See, e.g., Mooney.* On the merits of the "agency" issue, they assert that the fact that the Commonwealth is authorized to provide medical benefits for employees does not mean that the vehicle for administering benefits automatically becomes a state agency. In other legal contexts the Commonwealth's participation in the creation of institutions of higher learning did not render them state agencies. *Pennsylvania State University v. Derry Township School District,* 557 Pa. 91, 731 A.2d 1272 (1999); *Mooney.* On a separate point, Respondents state that Petitioners' claim that PEBTF is funded entirely by the Commonwealth is simply untrue, referring to its Exhibit 1 showing that a portion of PEBTF funds come from contributions by employees and retirees, and it lists additional sources of income as interest earned and premiums from COBRA payments. They repeat that funding for PEBTF does not appear as a line item on the state budget.

### III

■ In ruling on preliminary objections, the Court must accept as true all well pleaded allegations of material fact as well as all of the inferences reasonably deducible from the facts pleaded. *Marca-*

*vage v. Rendell,* 888 A.2d 940 (Pa.Cmwlth. 2005). For preliminary objections to be sustained, it must appear with certainty that the law will permit no recovery, and any doubt must be resolved in favor of the non-moving party by refusing to sustain the objections. *Id.* When the motion is in the nature of a demurrer, all of the non-moving party's allegations of fact in the complaint must be accepted as true, and only those facts specifically admitted may be considered against the non-moving party. *Department of Auditor General v. State Employees' Retirement System,* 836 A.2d 1053 (Pa.Cmwlth.2003), *subsequent determination,* 860 A.2d 206 (Pa.Cmwlth. 2004).

■ After its consideration of the preliminary objections and the response thereto, the Court concludes that the preliminary objections must be overruled. First, the jurisdictional objection is based solely on an assertion that PEBTF is not an agency within the meaning of the Sunshine Act. In *Heath v. Workers' Compensation Appeal Board (Pennsylvania Board of Probation and Parole),* 580 Pa. 174, 860 A.2d 25 (2004), the Supreme Court reiterated that the test for determining jurisdiction over a subject matter is the competency of the court to determine controversies of the general class to which the case presented belongs, or in other words the power to enter into the inquiry. The test is not whether the court might ultimately decide it was able to grant the relief sought. As cases illustrate, this

---

the executive branch, not a "committee" thereof.

Amicus also responds to the claim of mootness by pointing out that the Court has decided questions otherwise rendered moot where the questions presented are of great public importance, involve exceptional circumstances or are capable of repetition yet likely to evade review, citing *Strax v. Department of Transportation, Bureau of Driver Licensing,*

138 Pa.Cmwlth. 368, 588 A.2d 87 (1991), *aff'd,* 530 Pa. 203, 607 A.2d 1075 (1992). Regarding the assertion that Petitioners seek to limit free speech, Amicus points out that the clear purpose of the Sunshine Act in requiring notice and public access to meetings where official business is transacted is to foster free speech, discussion, deliberation, input, oversight and review by members of the public.

Court has the power to enter into the inquiry and to decide whether an entity is an agency subject to the Sunshine Act or similar legislation. *Mooney; Roy v. Pennsylvania State University*, 130 Pa.Cmwlth. 468, 568 A.2d 751 (1990).

Second, Respondents argue to a substantial degree on the basis of factual assertions apart from the allegations of the petition for review or any other properly advanced factual assertions. Respondents' reliance on factual assertions supported by exhibits attached to their memorandum (apart from the Trust Agreement), such as the status of employees of PEBTF as subject to jurisdiction of the NLRB rather than PERA, refutes their contention that the question of whether PEBTF is an agency subject to the Sunshine Act is purely a question of law. Nevertheless, the effort to introduce extensive factual material relating to the merits of the basic issue at this stage plainly is contrary to the purpose of preliminary objections. In regard to the demurrer, this Court has stated that a demurrer cannot aver the existence of facts not apparent from the face of the challenged pleading and that a trial court is "limited to consideration of the allegations as set forth in the complaint when considering a demurrer." *Beaver v. Coatesville Area School District*, 845 A.2d 955, 958 (Pa.Cmwlth.2004).

The present case concerns the precise nature of an entity that receives contributions from state sources in the range of hundreds of millions of dollars per year and that makes decisions on what medical benefits will be purchased from what vendors for the majority of state employees. It does not appear with certainty that the law will permit no recovery or relief on the basis of the facts pleaded in this case. *Marcavage.* Accordingly, the Court overrules Respondents' preliminary objections

and directs them to file an answer to Petitioners' petition for review.

Cohn Jubelirer, J., did not participate in the decision in this case.

### ORDER

AND NOW, this 16th day of March, 2006, the preliminary objections of Respondents Pennsylvania Employees Benefit Trust Fund et al. are overruled. Respondents' motion to dismiss is denied. Respondents are directed to file an answer within thirty days of the date of this order.

DISSENTING OPINION BY Judge PELLEGRINI.

I respectfully disagree with the majority that there is any question that the Pennsylvania Employees Benefit Trust Fund (Fund), a non-profit private entity, is an agency within the definition of the Sunshine Act.[1] Because it is clear that it is not, I would sustain the Fund's preliminary objections and dismiss the petition for review.

This case arose when House Majority Leader Samuel H. Smith and Chairman of the House Appropriations Committee Brett O. Feese filed a petition for review in our original jurisdiction alleging that the Fund was going to conduct a private meeting on the issue of whether the Fund would extend medical benefits to same-sex partners of Commonwealth employees and annuitants. They alleged that because the Fund was an agency within the meaning of the Sunshine Act, it was required to comply with notice requirements and conduct the meeting in public. In response to their petition, the Fund filed preliminary objections alleging, *inter alia*, that this Court lacked jurisdiction to hear the matter because the Fund was not an agency as defined in the Sunshine Act.

The majority overrules the Fund's preliminary objections, specifically regarding

1. 65 Pa.C.S. §§ 701–716.

the jurisdictional issue, stating that, "As cases illustrate, this Court has the power to enter into the inquiry and to decide whether an entity is an agency subject to the Sunshine Act or similar legislation." (Slip op. at 12.) It then concludes that the question of whether the Fund is an agency subject to the Sunshine Act is not purely a question of law and is "contrary to the purpose of preliminary objections.... It does not appear with certainty that the law will permit no recovery or relief on the basis of the facts pleaded in this case." (Slip op. at 13.) In doing so, the majority essentially determines that the Fund is an agency within the definition of the Sunshine Act. I disagree with this determination because the Fund does not fall within the definition of "agency" as that term is defined in the Sunshine Act.

The Sunshine Act, 65 Pa.C.S. § 703, defines "agency" as follows:

The Body, and all committees thereof authorized by the body to take official action or render advice on matters of agency business, of all the following: the General Assembly, the executive branch of the government of this Commonwealth, including the Governor's Cabinet when meeting on official policy-making business, any board, council, authority or commission of the Commonwealth or of any political subdivision of the Commonwealth or any State, municipal, township or school authority, school board, school governing body, commission, the boards of trustees of all State-aided colleges and universities, the councils of trustees of all State-owned colleges and universities and all community colleges *or similar organizations created by or pursuant to a statute* which declares in substance that the organization performs or has for its purpose the performance of an essential governmental function and through the joint action of its members exercises governmental authority and takes official action. The term shall include the governing board of any nonprofit corporation which by a mutually binding legal written agreement with a community college or State-aided, State-owned or State-related institution of higher education is granted legally enforceable supervisory and advisory powers regarding the degree programs of the institution of higher education. The term does not include a caucus or a meeting of an ethics committee created under the rules of the senate or House of Representatives. (Emphasis added.)

The Fund does not fall within this definition as it is not the General Assembly, the executive branch of the government of this Commonwealth, a school board or other similar organization, and, most importantly, it was not created by statute. Rather, the Fund was created pursuant to a collective bargaining between the Commonwealth and the American Federation of State, County and Municipal Employees Council 13, which resulted in an Agreement and Declaration of Trust (Trust Agreement). The Trust Agreement provides for the establishment of a trust fund to receive contributions from the Commonwealth that it is contractually obligated to pay and other employers for the purpose of paying health and medical benefits for the employees of the participating employers, but that is the extent of the Commonwealth's involvement.[2]

The Trust Agreement specifies that the entire responsibility for operating, administering, developing and implementing the medical program is vested in 14 Trustees.

2. We note that the majority only cites to facts contained in the petition for review while the dissent cites to facts contained in the Trust Agreement. The Trust Agreement was pled by the Fund in paragraph 8 of its petition for review, but was not attached to the petition.

These Trustees, who receive no compensation for their efforts, are designated equally by the unions and the Secretary of Administration,[3] and it is the Trustees solely who select all vendors and authorize all contracts. The Commonwealth has no decision-making authority regarding these contracts, and the contracts are not entered into on behalf of the Commonwealth. The Fund's budget is determined by contributions it receives pursuant to the various collective bargaining agreements between the Commonwealth and participating unions, and the contribution amounts are set solely through collective bargaining.

The Fund, which is a non-profit, private entity, is entirely funded by the Commonwealth as part of its financial obligation made during collective bargaining in contrast to **other** Commonwealth agencies which, as part of the Commonwealth, are funded by the state because the state has to if it wants to keep the government operating. While the Fund's contributions are from the Commonwealth, our Supreme Court in *Mooney v. Temple University Board of Trustees*, 448 Pa. 424, 292 A.2d 395 (1972), held that receipt of contributions by Temple University, a non-profit corporation, from the Commonwealth did not convert the university into a state agency. "The receipt by Temple of increased state financial aid no more transforms Temple into a state 'agency' than the receipt of federal funds can make Temple an agency of the federal government." *Id.* at 430, 292 A.2d at 399. Similarly, in this case, the fact that the Fund receives some contribution from the Commonwealth does not transform it into a state "agency."

Because Section 1 of the Sunshine Act, 65 Pa.C.S. § 704, requires that "official action and deliberations ... of an agency shall take place at a meeting open to the public," but the Fund does not exercise any governmental authority and does not take official action as it is not an agency, I would grant the Fund's preliminary objections and dissent accordingly.

Judge LEADBETTER joins this dissenting opinion.

---

In *Martin v. Commonwealth, Department of Transportation*, 124 Pa.Cmwlth. 625, 556 A.2d 969, 971 (1989), this Court stated:

> This court has held that a demurer cannot aver the existence of facts not apparent from the face of the challenged pleading. [Citation omitted.] A limited exception to this general prohibition is recognized where a plaintiff avers the existence of a written agreement and relies upon it to establish his cause of action. In such a case, a defendant may properly annex that agreement without creating an impermissible speaking demurrer since the agreement is a factual matter arising out of the complaint itself.

Accordingly, the facts cited by the dissent are properly used in resolving this matter.

3. The Trust Agreement designates that the Board of Trustees will consist of no less than 14 and no more than 22 initial Trustees, half of whom represent management and half of whom represent the employees. Section 3.02 of the Trust Agreement provides that Employer Trustees "shall be appointed by the Secretary of Administration of the Commonwealth of Pennsylvania. Such Employer Trustees may be employees or representatives of the Commonwealth of Pennsylvania or other independent agencies, political subdivisions *or other entities* which have agreed to participate in this Fund." (Emphasis added.) Because only one-half of the Trustees are appointed by the Commonwealth, and they may not even be representatives of the Commonwealth but may be from an entity outside the Commonwealth government, clearly the parties to the Trust Agreement did not intend for the Commonwealth to control the Board of Trustees.