IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Francis Twardy,                              :
                    Appellant               :
                                            :
          v.                                :
                                            :
City of Philadelphia,                       :
Board of License and                        : No. 1912 C.D. 2012
Inspection Review                           : Submitted: March 14, 2014

BEFORE:   HONORABLE BERNARD L. McGINLEY, Judge
          HONORABLE ROBERT SIMPSON, Judge
          HONORABLE JAMES GARDNER COLINS, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE McGINLEY                          FILED:  August 12, 2014

Francis Twardy (Twardy) appeals the order of the Court of Common Pleas of Philadelphia County (common pleas court) that affirmed the order of the City of Philadelphia Board of License Inspection Review (Board) that affirmed the City of Philadelphia Department of License and Inspections' (L&I) issuance of a cease operations order.

In 1995, 19th and Sansom Corporation (Sansom) and Supreme Catering Services, Inc. (Supreme) entered into a lease for real property located at 121 South 19th Street (Property) in the City of Philadelphia. In 2003, Anthony Fusco (Fusco) and Derry Ellis (Ellis) entered into a sublease with Supreme for the Property on which Fusco and Ellis operated a private club. On April 1, 2004, Kenrich Athletic Club (Kenrich), with Twardy as president and steward, occupied the property pursuant to an assignment of the sublease from Fusco and Ellis.

Beginning in 2007, Kenrich operated the Property as a private "after hours" club. Kenrich held a private club liquor license for the Property which was issued by the Pennsylvania Liquor Control Board (LCB) and it was authorized to be open only for members and could operate until 3:30 a.m.

Following the execution of the lease between Sansom and Supreme, a zoning use change was granted which permitted the Property's first and second floors to be used for a restaurant/bar/catering and the third floor as an accessory office. It had previously been used as a single family dwelling with an office. A December 1999 Use update permitted the first and second floor bar/restaurant to include live entertainment and dancing and dining on the third floor.

After prior notices for City Code violations were issued in January 2010, L&I issued a Site Violation Notice on May 4, 2010, and ordered that all work/operations cease at the Property on the basis that such operations constituted a public nuisance and that Kenrich failed to obtain a Special Assembly Occupancy License (SAOL). Department of Licenses and Inspections Site Violation, May 4, 2010, at 1; Reproduced Record (R.R.) at 52a.[1]

---

[1] This Court notes that Kenrich was the entity which operated the private club at the Property, not Twardy who was the president and steward. Kenrich, not Twardy, was the proper party to appeal the cease operations notice to the Board. A corporation may not proceed *pro se* with a non-attorney representing it. Walacavage v. Excel 2000, Inc., 480 A.2d 281 (Pa. Super. 1984). Twardy improperly represented Kenrich before the Board, the common pleas court, and now this Court. The City of Philadelphia did not object to Twardy's representation before the Board and the common pleas court. Furthermore, the City of Philadelphia does not object to Twardy's standing here. Because a court may not raise the issue of standing *sua sponte*, Rendell v. State Ethics Commission, 983 A.2d 708 (Pa. 2009), this Court will address Twardy's appeal.

2

Twardy appealed the Site Violation to the Board and asserted that he failed to obtain a special assembly license because he had not received Lawful Occupancy (L.O.)[2] and Certificate of Occupancy (C.O.)[3] permits though he applied for them. He also stated:

> This location is zoned to house an SAOL. An SAOL is desired. An SAOL is not required as the location may entertain as Paragraph #4 of the SAOL Code not requiring an SAOL. Closing this location is invalid and it is respectfully requested we be reopened as we were before 5/4/10, open while actively persuing [sic] the L.O., C.O. and finally SAOL. (Emphasis in original).

Appeal, Board of License and Inspection Review, May 7, 2010, at 2-3; Supplemental Reproduced Record (S.R.R.) at 13b-14b.

The Board heard Twardy's appeal on June 24, 2010. Zenobia Harris, a representative of Philadelphia City councilman Darrel Clark, testified, "Our office has been inundated with calls, letters, e-mails regarding the ongoing activities at 121 South 19th Street. We asked that you adhere to the community's grievances with regard to their concerns before making your decision. And I'm

___

[2] A lawful occupancy sign lists the number of people permitted in the room or space for assembly. A lawful occupancy is obtained through the submission of plans which list all rooms (the dimensions and type of room), seating chart and occupant loads, locations of doors, windows, stairways, corridors, plumbing fixtures etc. See Section F-1004.3 of the Philadelphia Fire Prevention Code; See also, Section B-1004.3 of the Philadelphia Building Code.

[3] Section A-701.1 of the Philadelphia Administrative Code provides in pertinent part: "A certificate of occupancy, indicating compliance with permits and construction documents, shall be obtained prior to occupancy of a building in the following cases: 1. Erection of a new building. 2. Erection of an addition to a building. 3. Change from one Occupancy Group to another."

here to show support for them." Notes of Testimony, June 24, 2010, (N.T.) at 47; S.R.R. at 27b.

Dominic Verdi (Verdi), deputy commissioner of L&I, testified that a cease operations order was issued against Kenrich because there was "no certificate of occupancy, no lawful occupancy sign, and no special assembly occupancy." N.T. at 49; S.R.R. at 27b. Verdi testified that Kenrich was not eligible for an SAOL because there was no L.O. sign, no C.O., no community approval, and no police approval. N.T. at 55; S.R.R. at 29b. Verdi testified that L&I heard complaints about Kenrich at least once a week from neighbors. N.T. at 57; S.R.R. at 29b. On cross-examination, Verdi testified that if an entity operates a location with only fifty members and does not have a disc jockey, then the entity did not need an SAOL. However, when Verdi visited Kenrich there were more than fifty people and there was a disc jockey. N.T. at 57-58; S.R.R. at 29b-30b. In January 2010, a cease violation notice was issued, but, pursuant to an agreement with L&I, Kenrich was allowed to stay open while it attempted to obtain a C.O. and an L.O. approval. N.T. at 58-59; S.R.R. at 30b.

Sergeant William Nicholas Latorre (Sgt. Latorre) of the Pennsylvania State Police and commander of the district enforcement office in Philadelphia for the Pennsylvania State Police, Bureau of Liquor Control Enforcement, testified that from May 2007, until the date of the hearing, Kenrich received forty-four different violations of its liquor license for:

> [B]eing a noisy bar, serving visibly intoxicated persons, sales to non-members, allowing minors to frequent, after-hour sales, and failure to vacate, off-premises sales, sales

4

of unlimited drinks for a set price, failure to maintain truthful records, and various other violations which then resulted in an administrative citation being issued to them and triggering the administrative law process. From – from that point in 2007 I know that there was a meeting with the licensee with the District Attorney's Office in order to get them to become compliant. There was a subsequent meeting with the licensee in the spring of 2008 to gain voluntary compliance of the licensee. That didn't work, so we proceeded with enforcement. Several cases have been initiated against them to result and include criminal arrests for violations of the liquor code.

N.T. at 80-81; S.R.R. at 35b. Sgt. Latorre characterized Kenrich as a nuisance bar. N.T. at 87; S.R.R. at 37b.

Captain Dennis Wilson (Capt. Wilson), commander of the City of Philadelphia Police Department's Ninth District where the Property was located, testified that over the three years he was commanding officer there was a lot of police activity at the Property. He also characterized Kenrich as a "nuisance for the police as well as the community." N.T. at 93; S.R.R. at 38b. Capt. Wilson related, "[t]here was a fight inside the bar that spilled outside the bar. After that they got the . . . combatants in this fight to get their cars and go. And both sides got in a running gun battle that started at 22nd and Chestnut." N.T. at 99; S.R.R. at 40b.

David Schwartz, the owner of a business across the street from the Property, testified that he had to clean up beer bottles and vomit from outside his business many times when Kenrich was operating. Brenard G. Heinzes, who resided in a nearby apartment building, testified that when he looks out his window:

5

I see a lot of people out in the street screaming out there. I see cars with horns honking, cabs lined up waiting to pick people up honking their horns. . . . [I]t's all the people either standing in line waiting to get in or coming out of the place. . . . And I see people vomiting in the street, people obviously intoxicated. I've seen fights.

N.T. at 109-110; S.R.R. at 42b-43b.[4]

Twardy testified that he was going to get an L.O. placard and a C.O. from L&I but was told the permits would not be issued because Verdi interfered with the process. N.T. at 135; S.R.R. at 49b. Twardy admitted that the permits were never issued. N.T. at 137; S.R.R. at 49b. He denied that Kenrich was turned down for an SAOL because Kenrich was not in possession of an L.O. and a C.O. N.T. at 139; S.R.R. at 50b. Twardy asserted that Sgt. Latorre tried to extort money from him and that was why Kenrich was mistakenly and temporarily shut down on May 1, 2010, because the liquor license was really not suspended though "Harrisburg said so." N.T. at 150-151; S.R.R. at 53b.

The Board affirmed the issuance of the cease operations order and made the following conclusions of law:

1. After a full hearing and consideration of the Record, there is substantial and credible evidence that Appellant [Kenrich] did not have the required Certificate of Occupancy, Lawful Occupancy Certificate, use registration permit for a private club, and Special Assembly Occupancy License for the subject property.

2. Even assuming, *arguendo*, that Appellant [Kenrich] did have a valid Certificate of Occupancy and Lawful

---

[4] Other neighbors of the Property appeared in opposition to Kenrich.

6

Occupancy Certificate, there is substantial and credible evidence that the subject property was not in compliance with all relevant local and state laws and that the subject property was not a safe and proper place for purposes of the special assembly occupancy.

3. The subject property violated the Philadelphia Code, and the Board therefore affirms the issuance of the Cease Operations Order by the City of Philadelphia Department of Licenses and Inspection.

Findings of Fact and Conclusions of Law of The Board of License and Inspection Review, Conclusions of Law Nos. 1-3 at 2-3; S.R.R. at 8b-10b.

Twardy appealed to the common pleas court. Twardy argued that the Board erred when it heard evidence of alleged crime, noise, community concerns and views of the City of Philadelphia Police Department. The evidence was highly prejudicial and entirely irrelevant because Twardy did not apply for an SAOL. Twardy asserted that he appeared before the Board to appeal the denial of the application for a C.O. and an L.O. and that the reaction of neighbors, the community, or police to a proposed location was not relevant. Twardy also argued that any testimony regarding Kenrich as a nuisance bar was entirely unsupported by the record and highly prejudicial. Twardy also argued that the Board erred when it did not issue the requested certificates because he met the criteria necessary to apply for a C.O. and L.O. permit.

The common pleas court affirmed:

Appellant [Twardy] argues that, in evaluating CO and LO applications, the Board was not required to consider the suitability of a potential location or the reaction of the community, neighbors, or police to a particular location. Twardy's argument is misplaced. His characterization of

7

the issue before the Board is erroneous. It is clear from the appeal papers filed with the Board that the issue before the Board was the appeal of L&I's decision to issue a Cease Operations Order for Twardy's club, and not the denial of his CO and LO applications. The stated reasons for the Cease Operations Order were public nuisance and failure to obtain a SAOL.

This Court's decision was proper because Twardy failed to show that the Board committed an error of law. . . . The hearing was for the Board to assess whether L&I correctly deemed Twardy's establishment to be a nuisance and whether it conformed to local and state laws. Therefore, it absolutely made sense for the Board to consider all information presented with respect to any alleged crime, noise, community concerns and views of the Police Department. The evidence to which Twardy objects is directly related to L&I's characterization of Twardy's establishment as a public nuisance and its failure to comply with local and state laws. Twardy failed to show that the Board committed an error of law in considering this information.

Twardy next argues that any testimony qualifying Kenrich as a 'nuisance' was entirely unsupported by the record and highly prejudicial. This argument must also fail. The Board received and reviewed credible testimony from neighbors, neighborhood associations and the Police Department regarding criminal activity in the neighborhood, patrons vomiting in the streets, noise coming from the Property at all hours, service to visibly intoxicated patrons, and the service of alcohol to minors, just to name a few. Further, the Pennsylvania State Police Liquor Control Enforcement (LCE), has determined that the operations of the subject premises brought about a nuisance. There was clearly substantial evidence to support a public nuisance finding.

Twardy next contends that it was an error of law for the Board not to issue the requested certificates because Twardy met the criteria necessary to apply for and obtain a CO and LO. The hearing was not to decide whether the Board would issue or deny the required certificates to

8

Twardy. Again, it is clear from the appeal papers filed with the Board that the issue before the Board was the appeal of the L&I's decision to issue a Cease Operations Order for Twardy's after-hours club, and not the denial of his applications for a LO and CO. Therefore, Twardy [sic] argument must fail. (Citations omitted).

Common Pleas Court Opinion, November 14, 2012, (Opinion) at 5-7; S.R.R. at 5b-7b.

Twardy contends that he was not required to possess an SAOL, that he met the criteria to receive a C.O. and an L.O., that the Board abused its discretion when it admitted and considered irrelevant, erroneous, and highly prejudicial information, and that the common pleas court erred when it considered irrelevant, erroneous, and highly prejudicial information.[5]

On May 8, 2013, the City of Philadelphia moved to dismiss Twardy's appeal as moot because the common pleas court in a related action ruled against Kenrich in an ejectment action at the Property so that even if Twardy prevailed here, the effect would be moot because Kenrich/Twardy no longer had the right to occupy, much less operate a business at the Property. On November 13, 2013, this Court ordered the motion to dismiss for mootness be decided with the merits of the appeal.

---

[5] This Court's review is limited to a determination of whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact were supported by substantial evidence. Society Hill Civic Association v. Philadelphia Board of License & Inspection Review, 905 A.2d 579 (Pa. Cmwlth. 2006).

Before addressing the merits of Twardy's appeal, this Court will review the motion to dismiss for mootness.

The law is well settled that a case will be dismissed as moot "unless an actual case or controversy exists at all stages of the judicial or administrative process." Musheno v. Dep't of Pub. Welfare, 829 A.2d 1228, 1231 (Pa. Cmwlth. 2003) (citing Faust v. Cairns, 88 A. 786 (Pa. 1913)). In In re D.A., 801 A.2d 614, 616 (Pa. Super. 2002), our Pennsylvania Superior Court stated:

> An issue can become moot during the pendency of an appeal due to an intervening change in the facts of the case or due to an intervening change in the applicable law. In that case, an opinion of this Court is rendered advisory in nature. An issue before a court is moot if in ruling upon the issue the court cannot enter an order that has any legal force or effect. (quotations and citations omitted).

A case becomes moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." U.S. Parole Comm'n v. Geraghty, 445 U.S. 388, 396 (1980) (citation omitted). Cases presenting mootness problems are those that involve litigants who clearly had standing to sue at the outset of the litigation. Then during the course of litigation, changes in the facts or in the law allegedly deprive the litigant of the necessary stake in the outcome. Pap's A.M. v. City of Erie, 812 A.2d 591 (Pa. 2002).

On rare occasions exceptions to this principle are made where the case involves issues important to the public interest, the conduct complained of is capable of repetition yet likely to evade review or a party will suffer some

10

detriment without the court's decision.  <u>Strax v. Dep't of Transp., Bureau of Driver Licensing</u>, 588 A.2d 87 (Pa. Cmwlth. 1991), *aff'd per curiam*, 607 A.2d 1075 (Pa. 1992).

The City of Philadelphia argues that an actual case or controversy no longer exists because the common pleas court ruled against Kenrich in an ejectment action and found that Kenrich had no right to occupy the Property.  As a result, Kenrich/Twardy is no longer aggrieved by the order that directed that all work/operations cease at the premises located at 121 S. 19th Street.

Twardy argues in his reply brief[6] that as long as the appeal of the ejectment action is still before this Court and that the suit against City of Philadelphia is ongoing in federal court, the present action is not moot.

Recently, this Court affirmed the common pleas court's order ejecting Kenrich from the Property.  <u>Kenrich Athletic Club v. 19th and Sansom Corp.</u>, (Pa. Cmwlth., No. 955 C.D. 2013, filed August 11, 2014).  As a result, one of the prongs of Twardy's argument fails.  Nothing in the record states the substance of Twardy's lawsuit against City of Philadelphia officials or explains why the outcome of that lawsuit would affect Kenrich's legal ability to occupy the Property.  Given that this Court ruled that the common pleas court did not err when

---

[6]    Twardy moved to dismiss on April 28, 2014, on the basis that the City of Philadelphia failed to timely serve him with a copy of its brief; therefore he could not respond with a reply brief.  The City of Philadelphia answered that it did not oppose Twardy filing a reply brief which technically was late.  Twardy did so.  This Court denies Twardy's motion to dismiss.

11

it ruled against Kenrich in the ejectment action, this Court agrees with the City of Philadelphia that no case or controversy exists in the present case because even if this Court reversed the common pleas court here, Kenrich/Twardy would not be able to occupy the Property much less operate a private club there. Consequently, this Court grants the City of Philadelphia's motion to dismiss as moot.

Assuming arguendo that the case is not moot, this Court would affirm the common pleas court. Twardy appealed the cease operations order which was issued because Kenrich did not have an SAOL and was a public nuisance. Twardy argues before this Court that he did not need an SAOL. To the contrary, the record indicated that he did. Further, Twardy argues that he appeared before the Board to appeal the denial of his applications for a C.O. and an L.O. The record is clear that Twardy appealed the cease operations order. Twardy also asserts that the Board abused its discretion as did the common pleas court when both considered the testimony of neighbors and law enforcement officials concerning Kenrich because that information was only relevant for an SAOL. Once again, Twardy fails to realize that the lack of an SAOL was the basis for the hearing before the Board and for the appeal to the common pleas court.

Accordingly, this Court grants the motion to dismiss the appeal for mootness and, in the alternative, affirms the common pleas court's dismissal of Twardy's appeal.

_____
BERNARD L. McGINLEY, Judge

12

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Francis Twardy,                                          :
                            Appellant                    :
                                                         :
               v.                                        :
                                                         :
City of Philadelphia,                                    :
Board of License and                                    : No. 1912 C.D. 2012
Inspection Review                                        :

## **O R D E R**

AND NOW, this 12th day of August, 2014, this Court grants the City of Philadelphia's motion to dismiss this appeal as moot and denies Francis Twardy's motion to dismiss this appeal.


_____
BERNARD L. McGINLEY, Judge